[Cite as *State v. Wood*, 2020-Ohio-422.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-07-022 |
| | : | O P I N I O N |
| - vs - | | 2/10/2020 |
| | : | |
| DUSTYN T. WOOD, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20180046


Stephen J. Pronai, Madison County Prosecuting Attorney, Rachel M. Price, 59 North Main Street, London, Ohio 43140, for appellee

Engel & Martin, LLC, Jim L. Hardin, 4660 Duke Drive, Suite 101, Mason, Ohio 45040, for appellant


**PIPER, J.**

{¶ 1}   Appellant, Dustyn Wood, appeals his convictions in the Madison County Court of Common Pleas for multiple counts of attempted murder, felonious assault, aggravated robbery, having weapons under disability, as well as accompanying specifications.

{¶ 2}   Wood, along with three others, went to the apartment occupied by Aaron Kirk and Joshua Sollars to purchase methamphetamine.  The men began to argue over price and

sampling of the drugs, and Wood shot Kirk and Sollars during the disagreement. Wood and his companions fled the apartment. Wood was later apprehended by police, arrested, and indicted on two counts of attempted murder, with repeat violent offender and firearm specifications, two counts of felonious assault and their accompanying repeat violent offender and firearm specifications, one count of aggravated robbery, and one count of having weapons while under disability. Wood pled not guilty to the charges.

{¶ 3} At Wood's request, the trial court bifurcated the proceedings so that the weapons under disability charge and the repeat violent offender and firearm specifications were tried by the bench while a jury trial occurred for the remaining counts. The jury and trial court found Wood guilty on all charges and specifications, and after merger, the trial court sentenced Wood to an aggregate sentence of 39 years and 9 months in prison. Wood now appeals his convictions and sentence, raising the following assignments of error.

{¶ 4} Assignment of Error No. 1:

{¶ 5} THE TRIAL COURT ERRED IN IMPOSING MAXIMUM CONSECUTIVE SENTENCES ON APPELLANT BY FAILING TO PROPERLY CONSIDER THE FACTORS REQUIRED BY R.C. SECTIONS 2929.11 AND 2929.12 WHEN IMPOSING SENTENCE.

{¶ 6} Wood argues in his first assignment of error that the trial court erred in sentencing him to a maximum consecutive sentence.

{¶ 7} An appellate court reviews the imposed sentence according to R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. R.C. 2953.08(G)(2) provides that an appellate court can modify or vacate a sentence only if the appellate court finds by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.

{¶ 8} A sentence is not clearly and convincingly contrary to law where the trial court

- 2 -

"considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.

{¶ 9} A consecutive sentence is contrary to law where the trial court fails to make the consecutive sentencing findings required by R.C. 2929.14(C)(4). *State v. Marshall*, 12th Dist. Warren No. CA2013-05-042, 2013-Ohio-5092, ¶ 8. Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Smith*, 12th Dist. Clermont No. CA2014-07-054, 2015-Ohio-1093, ¶ 7. Specifically, the trial court must find that (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 10} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and

incorporate its findings into its sentencing entry." *State v. Bonnell*, 140 Ohio St. 3d 209, 2014-Ohio-3177, ¶ 37. While the trial court is not required to give reasons explaining these findings, it must be clear from the record that the court engaged in the required sentencing analysis and made the requisite findings. *Smith* at ¶ 8.

{¶ 11} The record clearly indicates, and Wood does not challenge, that the trial court's sentence was within the statutory range for the enumerated felony designations of his convictions. Wood, however, does challenge the trial court's consideration of relevant statutory factors specific to sentencing and claims that the trial court erred in balancing the factors. However, the record demonstrates that the trial court properly considered the required factors within R.C. 2929.11 and 2929.12, as the trial court referenced facts specific to the factors both during the sentencing hearing, and as indicated in the trial court's sentencing entry. For example, the trial court specifically referenced factors, such as the seriousness of the crimes and Wood's high risk of recidivism as compared to Wood's unsuccessful response to prior incarceration.[1] Wood was also properly informed of the required postrelease control notifications.

{¶ 12} The trial court also made consecutive sentence findings at the sentencing hearing when it imposed sentence, as well as in its judgment entry of sentence. The trial court specifically found that consecutive sentences were necessary to protect the public from future crime, as well as to punish Wood for his crimes. It also found that the consecutive nature of the sentence was not disproportionate to the seriousness of Wood's conduct and to the danger he posed to the public.

---

1. We note that the trial court cited to various sections of R.C. 2929.12 during the sentencing hearing when discussing its consideration of the sentencing factors. However, it did not cite R.C. 2929.11 in the same manner. Yet, "the fact that the trial court did not expressly cite to R.C. 2929.11 * * * during the sentencing hearing is immaterial, considering [the court] specifically cited to both statutes within its sentencing entry." *State v. McCree*, 12th Dist. Warren No. CA2016-06-049, 2017-Ohio-791, ¶ 23. This is especially true where the court's discussion of the factors it did consider were inherent within R.C. 2929.11.

{¶ 13} While required to make only one additional finding, the trial court found that each of the three additional factors of R.C. 2929.14(C)(4)(a) thru (c) applied to Wood. The trial court found that (a) Wood's crimes were committed while Wood was subject to postrelease control, that (b) Wood's crimes were part of a course of conduct and that the harm of those crimes was so great that a single prison sentence would not reflect their seriousness, and also that (c) Wood's criminal history demonstrated that consecutive sentences were necessary to protect the public. Thus, Wood's sentence was not contrary to law.

{¶ 14} We also find that the trial court's findings were supported by the record. The record indicates that Wood had been released only two months from an 11-year sentence before he shot the victims, and that Wood committed the crimes while subject to postrelease control. The trial court also considered that Wood had been noncompliant while incarcerated, such as engaging in "assaultive-style behavior" with guards and inmates, and that Wood had not responded well to previous sanctions. The court detailed Wood's criminal history, including multiple juvenile offenses and adult offenses including theft, armed robbery, and violence against a police officer.

{¶ 15} The court also determined that Wood's crimes were more serious than normal, which is supported by the record because both victims spent extended time in the hospital to recover from their injuries.[2] The court noted that instead of merely showing the gun during the argument, Wood chose to use it by shooting the two victims who then suffered serious physical injury. After a thorough review, we find the trial court's findings are fully supported by the record. Wood's first assignment of error is, therefore, overruled.

---

2. Wood points out that at the sentencing hearing, the trial court referred to one count as aggravated murder instead of attempted murder. While Wood asserts that this misstatement of the charge influenced the trial court to impose a harsher sentence, that assumption is speculation not supported by the record. Instead, the trial court correctly indicated that the victims survived their injuries and then sentenced Wood within the correct statutory range for attempted murder rather than aggravated murder.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THE TRIAL COURT ERRED IN FAILING TO EITHER CONTINUE THE TRIAL IN PROGRESS OR TO SUA SPONTE DECLARE A MISTRIAL AS A RESULT OF TESTIMONY BASED UPON BALLISTICS REPORTS THAT WERE CLAIMED TO EXIST BUT WERE NOT PRODUCED TO THE DEFENSE AND WHICH FINDINGS WERE TESTIFIED TO AT THE TRIAL IN THE PRESENCE OF THE JURY.

{¶ 18} Wood argues in his second assignment of error that the trial court erred in not ordering the trial continued or by not declaring a mistrial once a witness testified about ballistic evidence.

{¶ 19} We note that Wood did not request a continuance or move for a mistrial when the ballistic evidence was discussed at trial. Thus, Wood has waived all but plain error. Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights, i.e., the error must have affected the outcome of the proceeding. Crim.R. 52(B). Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Hensley*, 12th Dist. Warren No. CA2009-11-156, 2010-Ohio-3822, ¶ 29.

{¶ 20} During the cross-examination of a detective who had investigated the incident, the detective testified that a gun owned by one of the victims had been sent for testing and that the lab concluded that the gun had not been fired. The trial court then posed questions to the witness about the victim's gun and the separate shell casings found at the scene of the shooting, and Wood's counsel requested a sidebar conference. The sidebar was not transcribed. However, the court excused the jury and noted that during the sidebar, defense counsel stated that it had not been given a report of ballistic testing results.

{¶ 21} The trial court stated its intention to cease its line of questioning regarding the ballistic testing and gave the parties the opportunity to question the witness again. During

- 6 -

the state's redirect, it asked the witness what shell casings had been located at the scene, and the witness testified that two casings were found on the floor, and that they were consistent with the type of gun used by Wood. Wood then engaged in recross regarding the victim's gun and whether it was fully loaded at the time it was taken as evidence on the night of the shooting.

{¶ 22} While there is no dispute that the ballistics report was not in evidence, there is no indication that its absence prejudiced Wood or constituted reversible error. Instead, the state presented multiple witnesses who testified that Wood was the shooter, the jury heard evidence that the shell casings found in the apartment were consistent with the gun Wood used, and the victim testified that he did not possess his gun until after he was shot.

{¶ 23} Even if the victim had fired his gun at some point, thus disproving the ballistic report, there is no indication that Wood would have been acquitted. There was no evidence produced that Wood was acting in self-defense on the night of the shootings. In fact, Wood's defense at trial was that he was not the shooter. Thus, whether a victim used his gun in any way during the incident is immaterial to Wood's defense and would not have changed the outcome of the trial. Thus, Wood has failed to show plain error, and his second assignment of error is overruled.

{¶ 24} Assignment of Error No. 3:

{¶ 25} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 26} Wood argues in his final assignment of error that he was denied effective assistance of counsel.

{¶ 27} To prevail on an ineffective assistance of counsel claim, an appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of

reasonableness. *Id.* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694.

{¶ 28} A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. *Id.* at 689. While the wisdom of a given strategy may be debatable, trial tactics, even "debatable trial tactics," do not constitute a denial of effective assistance of counsel. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146.

{¶ 29} Wood first argues that his counsel was ineffective for lacking a successful defense strategy and failing to properly cross-examine the state's witnesses. Wood suggests that his counsel should have argued provocation or self-defense because those defenses would have been more persuasive *if* the victim's gun had been fired. However, that argument is based on mere speculation that the victim had used his gun before he was shot. This speculation is unreasonable because evidence, even absent the ballistic report, indicated that the victim did not possess or fire his gun before being shot. Even so, and as addressed above in Wood's second assignment of error, there is no indication that had the victim used his gun, Wood would have been successful on a self-defense claim. The fact that a trial strategy was not successful and that other strategies could have been employed simply does not support a finding of ineffective assistance of counsel.

{¶ 30} Wood also argues that his counsel was deficient for the manner in which he cross-examined the state's witnesses. However, Wood cannot establish ineffective assistance of counsel because the record demonstrates that counsel did cross-examine the witnesses in accordance with trial strategy, attempting to provide a basis for reasonable doubt in the jury's mind that Wood was the shooter. Counsel challenged the witnesses' credibility and tried to present a picture of the incident as a drug deal that went bad rather

than a designed attempted murder. Counsel asked questions about the witnesses' involvement with drugs, both in selling and using methamphetamine, to directly challenge their credibility, to cast doubt on the witnesses' ability to remember the incident, and to show that the witnesses had motive to lie. Counsel also asked witnesses about their ownership of firearms and possible usage of such during the night in question. Defense counsel also asked questions of the investigating officers, challenging the weight of the state's evidence and the appropriateness of the police investigation. There is no indication that any other or additional questions posed to the state's witnesses would have turned the tide in Wood's favor or convinced the jury to acquit.

{¶ 31} Wood also argues that he received ineffective assistance of counsel when his counsel did not permit him to testify. Whether a defendant testifies at trial is a clear example of trial strategy. *State v. Hubbard*, 12th Dist. Butler Nos. CA2006-09-216 and CA2006-09-231, 2007-Ohio-6029, ¶ 27. In this instance, the trial strategy was to raise reasonable doubt that Wood was the shooter by attacking the physical evidence and discrediting the state's witnesses. While Wood testifying would have allowed the jury to hear from him that he did not shoot the victims, there is no indication in the record that such testimony would have been believed, especially when compared to the evidence presented by the state against Wood.

{¶ 32} Moreover, we find the argument disingenuous where Wood, himself, told the trial court that he refused to testify in his defense and name anyone else as the shooter. Instead, Wood told the court that he refused to "snitch" and that he would not "go back to prison with that on my name. I refuse to do that." There is no indication that Wood would have testified in his own defense, or that even if he had, such testimony would have changed the results of the trial.

{¶ 33} Finally, Wood argues that his counsel was ineffective for not requesting a

presentence investigation or asking for more time before sentencing. Wood does not challenge the fact that no investigation was required because he was not subject to community control. *See* R.C. 2951.03(A)(1) and Crim.R. 32.2. Instead, Wood argues that a complete background would have been helpful to the trial court and that more information could have mitigated his otherwise negative history of incarceration and violence. However, there is no indication that any such information would have changed the sentence Wood received.

{¶ 34} Wood does not reference any specific mitigation evidence, other than mentioning the possibility of calling family as mitigation witnesses to show support or submitting letters to the court regarding "what he wanted the Court to know." Nor does Wood demonstrate how *any* additional information would have resulted in a different sentence, especially where the trial court's sentence was based on a careful consideration of the information it had before it regarding Wood's extensive criminal history, tendency toward violence, weapons use during the commission of crimes, and poor behavior while incarcerated. After considering all of Wood's arguments, we find that he has failed to demonstrate that he received ineffective assistance of counsel. We therefore overrule Wood's final assignment of error.

{¶ 35} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.