[Cite as *State v. Zitney*, 2021-Ohio-466.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-06-007 |
| | : | O P I N I O N |
| - vs - | | 2/22/2021 |
| | : | |
| DAVID A. ZITNEY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 19-500-224

Andrew T. McCoy, Clinton County Prosecuting Attorney, Katie Wilkin, 103 E. Main Street, Wilmington, Ohio 45177, for appellee

The Law Office of John D. Hill, LLC, John D. Hill, Jr., 125 East Court Street, Suite 1000, Cincinnati, Ohio 45202, for appellant

**HENDRICKSON, J.**

{¶1}  Appellant, David A. Zitney, appeals from his conviction in the Clinton County Court of Common Pleas for failure to comply with the order or signal of a police officer.  For the reasons set forth below, we affirm his conviction.

{¶2}  On December 9, 2019, appellant was indicted for failure to comply with the order or signal of a police officer, in which it was alleged that he caused a substantial risk

of serious physical harm to persons or property in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a felony of the third degree.  Appellant entered a not guilty plea to the charge.

{¶3}  A jury trial commenced on June 16, 2020.  At trial, the state presented testimony from Karen Abbitt, a deputy with the Clinton County Sheriff's Office, and from Don Fugate, the chief of the Massie Township Fire Department.  Deputy Abbitt testified that around 8:00 a.m. on October 19, 2019, she was dispatched to a Shell gas station located near the intersection of State Route 73 and Interstate 71 in Clinton County, Ohio to do a welfare check on a man sleeping in his pickup truck.  Deputy Abbitt arrived at the gas station in her marked police cruiser and in uniform.  The gas station was busy, with multiple cars and people in the parking lot.

{¶4}  Deputy Abbitt parked her police cruiser near the pickup truck and approached the vehicle on foot.  As she approached, Deputy Abbitt recognized appellant.  Appellant, who was initially parked, put his vehicle in drive and began pulling away from the deputy.  Deputy Abbitt gave multiple verbal commands for appellant to stop and knocked on the bed of his truck to get his attention.  Appellant momentarily stopped his truck, cracked his driver's window, and yelled something at Deputy Abbitt.

{¶5}  Fugate, who was present at the gas station, heard Deputy Abbitt's commands for appellant to stop his vehicle.  Fugate walked over to assist the deputy and, when he observed appellant try to drive away, stepped in front of the truck, holding his arm out in a "stop" signal.  Appellant briefly paused before continuing to edge his truck towards Fugate.  Fugate eventually stepped aside in order to protect his own safety.  Thereafter, while Deputy Abbitt was in physical contact with the side of appellant's truck, appellant quickly sped away.  Appellant exited the parking lot of the gas station at a high rate of speed, without stopping before entering the roadway.  Appellant's exit of the Shell station was caught on the gas station's surveillance camera.

{¶6} According to Fugate, the area where appellant entered the roadway is a "high traffic area." However, when appellant entered the roadway, he did not encounter any vehicles. Although appellant was traveling westbound on State Route 73, he drove in the eastbound lane. Appellant drove in the incorrect lane over an inclining bridge that had a peak, which made it difficult to see if traffic was approaching on the other side. Fugate explained there were double yellow lines on the bridge to prohibit vehicles from passing in that area.

{¶7} Deputy Abbitt returned to her police cruiser and initiated a pursuit of appellant along State Route 73. The deputy explained that the roadway in the area where the pursuit occurred is hilly, curvy, and comprised of two lanes, one lane running east and the other lane running west. Although Deputy Abbitt could not state with certainty the rate of speed at which appellant was traveling, she knew he was excessively speeding as she could not catch up with appellant despite driving more than 100 m.p.h. Deputy Abbitt observed other vehicles traveling in both lanes of travel as she pursued appellant.

{¶8} After pursuing appellant for approximately two miles, Deputy Abbitt crashed her cruiser into a cornfield when she overcorrected to avoid striking another vehicle. Although the deputy was not injured in the crash, her police cruiser sustained more than $20,000 in damages.

{¶9} After presenting testimony from Fugate and Deputy Abbitt, the state rested its case-in-chief. Defense counsel moved for acquittal pursuant to Crim.R. 29, arguing the state failed to prove that appellant's operation of his pickup truck created a substantial risk of serious physical harm to persons or property. The trial court denied appellant's motion. Appellant then presented testimony from Brittany Noah, a trooper employed by the Ohio State Highway Patrol. Trooper Noah investigated Deputy Abbitt's crash and ultimately determined that the proximate cause of the crash was Abbitt's failure to maintain control

over her motor vehicle. Thereafter, appellant rested his defense, and the matter was submitted to the jury.

{¶10} The jury found appellant guilty of failing to comply with the order or signal of a police officer and found that appellant caused a substantial risk of serious physical harm to persons or property. Appellant was sentenced to 36 months in prison and his driver's license was suspended for ten years.

{¶11} Appellant appealed his conviction, raising the following as his sole assignment of error:

{¶12} THE TRIAL COURT ERRED IN FINDING MR. ZITNEY GUILTY OF FAILURE TO COMPLY IN CONTRAVENTION OF R.C. 2921.331(B) AND 2921.331(C)(5)(a)(ii) AS THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN HIS CONVICTION, AND HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} Appellant does not dispute that the state proved beyond a reasonable doubt that he failed to comply with an order or signal of a police officer. He maintains, however, that the offense is a misdemeanor of the first degree, rather than a third-degree felony, as "the finding contained in R.C. 2921.331(C)(5)(a)(ii), which elevated the offense * * *, was not supported by sufficient evidence and was against the manifest weight of the evidence."

{¶14} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶15} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶16} Pursuant to R.C. 2921.331(B), "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." If the offender's operation of

the motor vehicle "caused a substantial risk of serious physical harm to persons or property," the offense is a third-degree felony.  R.C. 2921.331(C)(5)(a)(ii).

{¶17}  A "substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."  R.C. 2901.01(A)(8).  "Serious physical harm to persons" is defined to include, in relevant part, any of the following:

> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).  "Serious physical harm to property" is "any physical harm to property" that either "[r]esults in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace" or "[t]emporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time."  R.C. 2901.01(A)(6)(a)-(b).

{¶18}  Appellant admits that he was speeding at an unknown rate of speed and that he committed a marked lanes violation when fleeing from Deputy Abbitt.  He nonetheless contends that he did not cause a substantial risk of serious physical harm to persons or property as the state failed to show (1) that he caused or almost caused one or more traffic accidents, (2) that he traveled through a heavily trafficked, densely populated, or residential area at a high-rate of speed, (3) that he physically left the roadway and entered an area trafficked by pedestrians, such as a lawn, sidewalk, or parking lot, (4) that he violated

multiple traffic laws, (5) that he wove in and out of traffic at a high-rate of speed, or (6) that law enforcement's pursuit was of an extraordinary duration. To support his argument, appellant cites to numerous cases in which appellate courts have found sufficient evidence that a driver caused a substantial risk of serious physical harm to persons or property based on a combination of some of these factors. *See, e.g., State v. Monnin*, 12th Dist. Warren No. CA2016-07-058, 2017-Ohio-1095; *State v. Moore*, 8th Dist. Cuyahoga No. 93042, 2010-Ohio-518; *State v. Harrison*, 10th Dist. Franklin No. 07AP-98, 2007-Ohio-5099; *State v. Evans*, 9th Dist. Summit No. 23649, 2007-Ohio-5934.

{¶19} Contrary to appellant's assertions, the cases relied upon do not establish an exclusive list of factors that go to the issue of whether an offender's operation of a motor vehicle caused a substantial risk of serious physical harm to persons or property. Rather, in making such a determination, the trier of fact is entitled to view all the evidence surrounding the offender's effort to willfully elude or flee from a police officer.

{¶20} In the present case, after reviewing the record, weighing inferences and examining the credibility of the witness, we find that appellant's conviction is supported by sufficient evidence and is not against the weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offense, including the disputed element of substantial risk of serious physical harm to persons or property, proven beyond a reasonable doubt. Testimony from Deputy Abbitt and Fugate demonstrated that appellant's actions on October 19, 2019 created a strong possibility of serious physical harm to those individuals present at the Shell gas station and to those motorists traveling along State Route 73 when appellant fled from the gas station. Appellant drove through and exited the parking lot of a commercial establishment where other individuals were present at an excessive rate of speed. Appellant did not brake before entering the roadway and proceeded to drive at a high rate of speed, sometimes on the

wrong side of the road against traffic. As Fugate explained, the area where appellant entered the highway was a "high traffic area" and the roadway where appellant drove in the incorrect lane was curvy and hilly. In fact, the bridge appellant drove on had an inclining peak, which made it difficult to see if traffic was approaching on the other side of the bridge. Indeed, as Deputy Abbitt explained, traffic was observed traveling in both directions on State Route 73 during her pursuit of appellant. Appellant was driving at such a rapid speed that the deputy was unable to catch up to appellant, despite traveling more than 100 m.p.h.

{¶21} Additionally, while the advisability of Deputy Abbitt's initiation of the pursuit may be questioned under the circumstances presented in this case, the pursuit occurred in direct response to appellant's illegal conduct in failing to comply with an order or signal of a police officer to stop his vehicle. Appellant created the situation which ultimately caused the deputy's crash and damages exceeding $20,000.

{¶22} The fact that no one was severely injured and that appellant neither crashed, nearly crashed, nor caused a civilian motorist to crash does not render the evidence presented by the state insufficient or the verdict returned by the jury against the manifest weight of the evidence. As one of our sister courts noted in a failure to comply case,

> the failure of [a]ppellant to engage in a "near collision" speaks to nothing more than [a]ppellant's good luck and the careful driving on the part of other motorists on the road; such an assertion is irrelevant to our analysis because it fails to speak to the level of risk that appellant's reckless driving created.

*State v. Love*, 9th Dist. Summit No. CA 21654, 2004-Ohio-1422, ¶ 19.

{¶23} Accordingly, given the evidence presented, we find that appellant's conviction for failure to comply with the order or signal of a police officer as a felony of the third degree was supported by sufficient evidence and was not against the manifest weight of the evidence. The trier of fact did not lose its way or create such a manifest miscarriage of

justice that appellant's conviction must be reversed. We therefore overrule appellant's sole assignment of error.

{¶24} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.