[Cite as *State v. Mahmoud*, 2024-Ohio-4624.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-12-019 |
| | : | O P I N I O N |
| - vs - | | 9/23/2024 |
| | : | |
| HADEEM MOHAMAD MAHMOUD, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20230180

Jess C. Weade, Fayette County Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.

**PIPER, J.**

{¶ 1} Appellant, Hadeem Mohamad Mahmoud, appeals his conviction in the Fayette County Court of Common Pleas for one count of failure to comply. For the reasons discussed below, we affirm.

### I. Factual and Procedural Background

{¶ 2} On the afternoon of June 24, 2023, Sergeant Burd of the Ohio State Highway Patrol received information that a yellow Dodge Charger had been stolen from

a car dealership in northern Kentucky and was travelling northbound on Interstate 71. It was later determined that the yellow Charger was driven by Mahmoud.

{¶ 3} From his patrol car, Sergeant Burd observed northbound traffic and eventually spotted the yellow Charger on the highway. Sergeant Burd then followed the Charger, confirmed that the license plate and dealership tags matched the description of the stolen vehicle, and pulled alongside the Charger to look at the driver. Although the driver's side window of the Charger was tinted, Sergeant Burd could clearly observe the driver's facial features. Eventually, the driver turned to look at Sergeant Burd's vehicle, and Sergeant Burd had a clear view of the driver's face.

{¶ 4} Sergeant Burd radioed ahead to an airplane flown by the Ohio State Highway Patrol and told the pilot that he had located the stolen Charger and that he was backing off to avoid triggering a high-speed chase. As the Charger exited the interstate, Sergeant Burd heard the roar of the Charger's exhaust, indicating that the driver had "mashed" the accelerator. As Sergeant Burd attempted to catch up, he observed a yellow mirror flying through the air, indicating that the Charger had struck another vehicle. Seeing that the Charger was already driving recklessly, Sergeant Burd chose not to turn on his siren and lights to avoid escalating the chase. Sergeant Burd attempted to follow the Charger from a distance, observing the Charger reach speeds in excess of 100 miles per hour, until he lost sight of it on State Route 73.

{¶ 5} The police then received a "ping" from the navigation system in the Charger through a nearby cell tower enabling them to determine its general location. Several minutes after Sergeant Burd lost sight of the Charger, the airplane pilot located the Charger again. Another patrol car made contact with the Charger and activated its lights and siren, but the Charger did not stop. The police followed from a distance and attempted to deploy stop sticks in the Charger's path, but were unable to stop the vehicle.

The Charger eventually came to a stop on a dead-end street in Washington Court House, Fayette County, Ohio and the driver abandoned the vehicle. The police then lost sight of the driver.

{¶ 6} A few hours later, the police responded to reports of a suspicious female and juvenile male walking near the Washington Cemetery. Patrolman Marcum of the Washington Court House Police Department stopped and talked to the female and juvenile male, and learned that the juvenile male was a passenger in the Charger. The female and juvenile male provided a description of the driver.

{¶ 7} Later that night, Patrolman Marcum responded to a report of a suspicious man walking on U.S. Route 22. Patrolman Marcum made contact with the man and recognized that he matched the description previously provided. Patrolman Marcum then took a photograph of the man. The photograph was later sent to Sergeant Burd, who identified the photograph as the driver he observed in the yellow Charger. Mahmoud was identified as the driver and was later arrested.

{¶ 8} After a jury trial, Mahmoud was found guilty on one count of failure to comply. Mahmoud now appeals, raising one assignment of error for our review.

## II. Legal Analysis

{¶ 9} Assignment of Error No. 1:

THE TRIAL COURT ERRED WHEN IT ACCEPTED THE GUILTY VERDICT AS SUCH VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 10} In his sole assignment of error, Mahmoud argues that the jury's verdict was against the manifest weight of the evidence because the evidence did not clearly establish his identity as the driver of the Charger. Mahmoud asserts that Sergeant Burd was lying when he testified that he could clearly observe the facial features of the driver through the tinted window, and that the facial features of the driver would have been shadowed and

obscured. Mahmoud further asserts that Sergeant Burd based his identification of the photograph purely on the circumstance that Mahmoud was found walking in the area near where the Charger was abandoned. Therefore, Mahmoud argues that the jury clearly lost its way when it found Sergeant Burd's testimony to be credible. We disagree.

**A. Standard of Review**

{¶ 11} When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 12} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

{¶ 13} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 2012-Ohio-1289,

¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 2021-Ohio-466, ¶ 15 (12th Dist.). A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Reeder*, 2021-Ohio-2988, ¶ 31 (12th Dist.).

## B. Analysis

{¶ 14} The sole issue in this case is the identity of the individual who was driving the Charger. It is well established that to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime. *State v. Harner*, 2020-Ohio-3071, ¶ 13 (12th Dist.). To that end, "[o]ne witness's testimony is enough to prove a fact of consequence." *State v. Ruggles*, 2020-Ohio-2886, ¶ 53 (12th Dist.).

{¶ 15} Here, Sergeant Burd testified that he has extensive training and experience in identifying facial features, that he was able to pull alongside the driver's side window of the Charger, and that he could clearly see the jawline and facial structure of the driver when he turned to look at him. Although the window was tinted, it was not entirely opaque, and Sergeant Burd testified that sunlight coming through the windshield of the Charger further illuminated the driver's face. When the photograph of Mahmoud was later shown to him, Sergeant Burd recognized that Mahmoud was the person he saw driving the Charger. The jury did not clearly lose its way in finding Sergeant Burd's testimony credible.

## III. Conclusion

{¶ 16} Mahmoud's convictions were supported by the manifest weight of the evidence, therefore we overrule his sole assignment of error.

{¶ 17} Judgment affirmed.

BYRNE, P.J., and HENDRICKSON, J., concur.