[Cite as *State v. MacPhereson*, 2024-Ohio-5359.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-03-016 |
| - vs - | : | O P I N I O N<br>11/12/2024 |
| | : | |
| ALEX LEE MACPHERESON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23CR41118

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Kidd & Urling LLC, and Thomas W. Kidd, Jr., for appellant

**M. POWELL, J.**

{¶ 1}  Appellant, Alex MacPhereson, appeals his convictions in the Warren County Court of Common Pleas for two counts of gross sexual imposition and three counts of rape.  For the reasons detailed below, we affirm.

{¶ 2}  Appellant started dating Jane Doe around 2017.  Both appellant and Doe

have children from prior relationships. As relevant here, appellant's daughter ("Amber") was born in September 2010. Doe's daughter ("Beth") was born in March 2012.[1]

{¶ 3} Doe described her relationship with appellant as nearly "perfect." Appellant provided for the family with his job in construction and was a father-figure for the children. However, on May 17, 2023, Beth told Doe that appellant had been inappropriately touching her private areas. Thereafter, Doe drove to the police station and made a report. During the ensuing investigation, Amber disclosed that appellant had also been touching her inappropriately.

{¶ 4} On October 30, 2023, the Warren County Grand Jury returned an indictment charging appellant with six counts of rape in violation of R.C. 2907.02(A)(1)(b). Appellant entered a not guilty plea. Appellant subsequently waived his right to a jury trial and the matter proceeded to a bench trial. Prior to trial, the state amended Count 3 of the indictment involving Beth to the lesser-included offense of gross sexual imposition.

{¶ 5} During trial, Beth testified about multiple instances of sexual abuse. By the time of trial, Beth was 11 years old. Beth testified that appellant sexually abused her "at least three times a week" in varying locations throughout their home. Beth testified the first incident happened on Amber's birthday ("birthday incident").[2] Beth testified that she and Amber stayed home from school that day because they missed the school bus. Beth stated that she was in the living room, lying on the couch with appellant and Amber when appellant asked Amber to get his vape pen from another room. Beth testified that when she and appellant were alone, appellant reached under her clothes and underwear and began rubbing her vagina with his hand. Appellant stopped when Amber returned to the

1. We are using pseudonyms for the purposes of privacy and readability. *State v. Kofron*, 2024-Ohio-3233, ¶ 2, fn. 1 (12th Dist.).

2. We adopt the trial court's classification of the relevant incidents, i.e., birthday incident, etc.

living room.

**{¶ 6}** Beth then testified about other instances of sexual abuse. Beth recalled that appellant would usually abuse her in the middle of the night or the in early morning hours. Beth testified about one time when appellant came into her bedroom, undressed her bottom half, and then licked her vagina ("bedroom incident"). Beth then testified about another instance in which appellant licked her vagina while she was on the couch in the living room ("couch incident").

**{¶ 7}** Beth also testified about a fourth incident, which she described as "the worst one." Beth explained that she was sleeping on the floor of the guest bedroom while Amber and appellant shared the bed. Beth testified that during the middle of the night, appellant got out of bed, removed her blanket, and attempted to bribe her to engage in sexual acts with him. When Beth declined, he continued anyway. Beth testified that appellant removed her clothes and proceeded to insert his penis into her vagina ("guest room incident").

**{¶ 8}** Amber was the next witness to testify. Amber testified that appellant had sexually abused her between five and ten times. However, she only testified about one such instance during the bench trial. Amber recalled that, on a Sunday morning right before her 12th birthday, appellant came into her bedroom, got into her bed, and touched her vagina with his hand ("Sunday morning incident"). Amber testified that appellant asked her if she "liked that" and told her that she should "give it a chance."

**{¶ 9}** Appellant testified on his own behalf and denied the allegations. He testified about his prior service in the military and his work in construction. Appellant acknowledged that he was a father figure to the children and stated that he thought he had a good relationship with Beth and a normal relationship with Amber. He repeated that he had not sexually abused the girls.

{¶ 10} Following the close of evidence, the trial court rendered its verdict. The trial court found there was insufficient evidence to support the rape charges contained in Counts 1 and 2 of the indictment involving Amber. However, the trial court found appellant guilty of the lesser-included offense of gross sexual imposition on Count 1. The trial court found appellant not guilty on Count 2. On the remaining counts, the trial court found appellant guilty on Count 3, the amended count of gross sexual imposition involving Beth. The court also found appellant guilty of three counts of rape involving Beth, as alleged in Counts 4, 5, and 6. The trial court imposed consecutive sentences and ordered that appellant serve a prison term of 25-years-to-life. Appellant now appeals, raising two assignments of error for review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN MACPHERESON'S CONVICTIONS.

{¶ 13} When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 14} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court

- 4 -

must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

{¶ 15} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Mahmoud*, 2024-Ohio-4624, ¶ 13 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 2021-Ohio-466, ¶ 15 (12th Dist.). A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Reeder*, 2021-Ohio-2988, ¶ 31 (12th Dist.).

{¶ 16} Appellant was convicted of gross sexual imposition and rape. Gross sexual imposition is defined in R.C. 2907.05 and prohibits an individual from having sexual contact with another when the other person is less than 13 years of age. R.C. 2907.05(A)(4). Sexual contact "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 17} Rape is defined in R.C. 2907.02 and prohibits an individual from engaging in sexual conduct with another when the other person is less than 13 years of age. R.C. 2907.02(A)(1)(b). Sexual conduct includes vaginal intercourse, fellatio, cunnilingus, and digital penetration of the vagina. R.C. 2907.01(A).

{¶ 18} On appeal, appellant argues there was insufficient evidence to prove that

sexual conduct or contact occurred because there was no physical evidence, and his convictions were based solely on the testimony of young minors without corroboration. Appellant states that he "unequivocally denied" the accusations and therefore maintains that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶ 19} However, as we have previously held, the testimony of one witness, if believed by the trier of fact, is enough to support a conviction. *State v. B.J.T.*, 2017-Ohio-8797, ¶ 28-29 (12th Dist.); *State v. Ruggles*, 2022-Ohio-1804, ¶ 31 (12th Dist.). "[T]here is nothing in the law that requires that a sexual assault victim's testimony be corroborated as a condition precedent to conviction." *State v. Robinson*, 2015-Ohio-4533, ¶ 41 (12th Dist.).

{¶ 20} In this case, Amber testified that appellant committed gross sexual imposition for his conduct when he touched her vagina during the Sunday morning incident. Beth testified that appellant raped her three times, for his conduct in performing cunnilingus during the bedroom incident and the couch incident, and when he vaginally penetrated her during the guest room incident and that he committed gross sexual imposition when he touched her vagina during the birthday incident. The victims both testified that they were under 13 years old when the abuse occurred.

{¶ 21} Although appellant claims the victims' testimony lacked credibility, it is well established that the trier of fact is in the best position to determine credibility and the weight to be given the evidence. *State v. Martino*, 2018-Ohio-2882, ¶ 13 (12th Dist.). The trial court found Amber and Beth's testimony to be credible, and thus did not believe appellant's denials. A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact or because the trier of fact believed the testimony of the state's witnesses. *State v. Jennings*, 2024-Ohio-383, ¶ 26

(12th Dist.). Considering the foregoing, we find that the trial court did not lose its way and did not create such a manifest miscarriage of justice that appellant's convictions for gross sexual imposition and rape must be reversed. Appellant's first assignment of error is overruled.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT ERRED IN ORDERING THAT THE PRISON TERMS BE SERVED CONSECUTIVELY.

{¶ 24} A felony sentence is reviewed under the standard in R.C. 2953.08(G)(2). *State v. Warnock*, 2024-Ohio-382, ¶ 64 (12th Dist.). That provision states that an appellate court may modify or vacate a sentence if the court finds by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law. *State v. Gable*, 2024-Ohio-293, ¶ 8 (12th Dist.).

{¶ 25} A consecutive sentence is contrary to law where the trial court fails to make the consecutive sentencing findings required by R.C. 2929.14(C)(4). *State v. Wood*, 2020-Ohio-422, ¶ 9 (12th Dist.). Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *Id.* Specifically, the trial court must find that: (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as

- 7 -

part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

**{¶ 26}** "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. While the trial court is not required to give reasons explaining these findings, it must be clear from the record that the court engaged in the required sentencing analysis and made the requisite findings. *State v. Miller*, 2022-Ohio-1438, ¶ 10 (12th Dist.).

**{¶ 27}** In the present case, the trial court considered the offenses in three different categories and stated the following:

> [I]n my head I group these offenses . . . I have them in three different categories. I have Count 1 which is the gross sexual imposition against [Amber]. Then I have Counts 3, 4, and 6, that is the bedroom incident, the couch incident, those are both rapes. Count 3 is the birthday incident that is a gross sexual imposition, I sort of group those together. And then there is the guest room incident [Count 5], which I believe [Beth] in this case testified specifically that it was the worst of them.
>
> . . .
>
> I am going to order that each of the groups of these offenses, be serviced [sic] consecutively to one another, which means Count 1 is 60 months. Count 3, 4, and 6, those are going to be served concurrently to each other, but consecutively to Count 1. And, I am going to order that the guest room incident, which is Count 5, be served consecutively to the group of sentences in 3, 4, 6 and also to Count 1.
>
> . . .

- 8 -

I do think that consecutive sentences are necessary to properly punish you, to protect the public, the overall sentence is not disproportionate [to] the conduct . . . involved here or the danger posed by you. I think each of the groups of these sentences require an individual sentence that should be served for that particular sentence or that particular offense or groups of offenses.

The trial court's sentencing entry incorporates the necessary consecutive sentencing findings.

**{¶ 28}** Appellant contends that the foregoing was insufficient to satisfy R.C. 2929.14(C)(4)(b) that the offenses "were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."

**{¶ 29}** However, after reviewing the record, we find appellant's argument to be without merit. Here, the trial court discussed appellant's course of conduct in committing the sexual offenses. The trial court noted that it considered the offenses in three different categories or "groups," i.e., the distinct harm to Amber, the distinct harm to Beth, and the distinct harm of the "worst" offense perpetrated against Beth. The trial court then stated that it considered each offense or "group" of offenses and determined that each demanded an individual sentence. Although the trial court is required to make the necessary findings, it is not "required to use the exact language set forth in the sentencing statute when making findings under R.C. 2929.14(C)(4)." *State v. Downing*, 2024-Ohio-381, ¶ 16 (12th Dist.). Here, the record contains the necessary finding that appellant's sexual offenses were committed as part of a course of conduct and that the harm caused to Amber and Beth from appellant's course of conduct was so great or unusual that no single prison term adequately reflected the seriousness of the conduct.

**{¶ 30}** Appellant argues in the alternative that even if the trial court made the necessary consecutive sentencing findings that the record does not support those findings because the court "did not focus upon tangible evidence or reasoned analysis." Appellant states that the trial court did not specifically mention that he had never been convicted of a felony, did not compare the length of "this sentence with his prior sentences," and did not discuss when appellant's "prior convictions occurred."

**{¶ 31}** Following review, we find that the evidence supports the trial court's consecutive sentence findings. The record here shows that appellant engaged in numerous instances of sexual abuse involving two pre-teen girls who viewed him as a father figure. Appellant is Amber's biological father while Beth referred to appellant as her stepdad. During sentencing, the victims described the pain and suffering they continued to experience because of appellant's actions. Although appellant had no prior felony record, he had multiple other run-ins with the law, including several misdemeanor convictions. The record further shows that he has engaged in additional misconduct while in jail. In sum, appellant's record does not mitigate the conduct leading to these serious criminal convictions. Accordingly, we find that the trial court's consecutive sentence findings were not clearly and convincingly unsupported by the record. Appellant's second assignment of error is overruled.

**{¶ 32}** Judgment affirmed.

BYRNE, P.J., and PIPER, J., concur.