[Cite as *State v. Kerns*, 2023-Ohio-517.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

CHARLOTTE ANN KERNS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 20 JE 0016

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 18 CR 196

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jane M. Hanlin*, Jefferson County Prosecutor, and *Atty. Jeffrey J. Bruzzese,* Assistant Prosecuting Attorney, Jefferson County Justice Center, 16001 State Route 7, Steubenville, Ohio 43952, for Plaintiff-Appellee and

*Atty. Edward F. Borkowski, Jr.,* P.O. Box 609151, Cleveland, Ohio 44109, for Defendant-Appellant.

Dated: February 15, 2023

**D'Apolito, P.J.**

**{¶1}** Appellant, Charlotte Ann Kerns, appeals three judgment entries of the Jefferson County Court of Common Pleas, in order to vacate her guilty plea and convictions for two counts of sexual battery in violation of R.C. 2907.03(A)(5), felonies of the second degree, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree. Appellant's victims were her two sons, who were under the age of thirteen when the crimes were committed. Immediately following her guilty plea, the trial court imposed an agreed aggregate sentence of fifteen years.

**{¶2}** First, Appellant argues that the trial court abused its discretion in concluding that she was competent to stand trial. Second, she argues that her guilty plea, entered pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970), was not knowingly, intelligently, and voluntarily made, as the trial court failed to undertake the heightened inquiry announced in *Alford*. Finally, Appellant argues that the trial court abused its discretion in overruling her pro se post-sentence motion to withdraw her plea without a hearing.

**{¶3}** For the following reasons, Appellant's convictions are affirmed.

## FACTS AND PROCEDURAL HISTORY

**{¶4}** On December 15, 2017, Appellant was named in a complaint in Case No. 18-CR-1 alleging two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree, based on the allegations of her sons, J.S. (d.o.b. 6/17/1998) and N.S. (d.o.b. 3/30/2001). J.S. and N.S. reported to the Jefferson County Sheriff's Department that their mother had been molesting them since they were approximately nine years of age.

**{¶5}** On January 10, 2018, a six-count indictment was filed alleging two counts of rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree; two counts of sexual battery in violation of R.C. 2907.03(A)(5), felonies of the second degree; and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree.

{¶6}     Appellant was interviewed by representatives from the Jefferson County Sheriff's Department.  During the interview, Appellant signed a written confession, which is not in the record.  According to the state's appellate brief, both lead investigators have died in the years following Appellant's conviction.

{¶7}     Appellant's trial counsel filed a motion for a competency evaluation on August 14, 2018.  The motion alleged that Appellant's intellectual deficits prevented her from understanding the charges against her and assisting in her own defense.  The trial court sustained the motion and Appellant was evaluated by H.A. Beazel, Psy.D., a clinical and forensic psychologist at the Forensic Diagnostic Center of District Nine, Inc. on August 30, 2018.

{¶8}     According to the report, Appellant attended special education classes in school due to her inability to comprehend.  Appellant's I.Q. test results ranged from 58 through 72 from 1978 to 1985.  According to an I.Q. test administered in November of 1987, Appellant scored well within the developmentally handicapped range, and the then-current score represented a decrease from her previous test results.  Beazel opined that her scores are within the range of borderline intellectual functioning to mild mental retardation, currently referred to as intellectual disability.

{¶9}     Appellant's school records designated her as "educable mentally retarded" from 1979 to 1981, and "developmentally handicapped" from 1981 to 1985 and 1987.  She graduated with a grade point average of 2.857 and a class rank of 49/179.

{¶10}    Appellant was employed at a fast food restaurant and a nursing home, each for roughly six years.  According to Beazel's report, Appellant was awarded social security disability in 2010 for back and neck surgery and a hip replacement.

{¶11}    Appellant began receiving outpatient treatment for anxiety, depression, and panic attacks in 2005.  At the time of Beazel's evaluation, she was prescribed Prozac, Klonopin, and Trazadone, and she was undergoing treatment to address the stress resulting from the pending charges.  She functioned without medication from roughly 2013 to 2016, but the death of her mother in 2015 began a downward spiral.

{¶12}    Appellant was married from 1994 to 2011.  She attributed her divorce to her former husband's infidelity.

**{¶13}** Beazel opined that Appellant appears to function within the borderline range. He further opined that she gives the impression of functioning somewhat higher than her level of intellectual disability based in part on the quality and content of her speech as well as her responses to questions tapping her general fund of knowledge.

**{¶14}** When Beazel asked about the charges against her, Appellant identified them as "Sex Abuse and I think Rape and I forget the other ones." She was unaware of the potential penalties, but surmised, "[p]robably prison * * *[and] probably a long time * * * ten or twenty years." (Rep., p. 7.)

**{¶15}** Appellant stated that she liked her trial counsel and Beazel opined that she was capable of relating to him. Beazel further opined Appellant "seems to be limited in her understanding and in her ability to relate what understanding she may have, but seems generally to know and understand court procedures and the roles of the primary individuals involved."

**{¶16}** When Beazel asked Appellant if she had difficulty understanding any particular legal concepts, she responded, "When they ask you questions * * * like *Miranda* [*v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694] Rights and stuff. I don't understand terminology and stuff." (Rep., p. 9.) At the conclusion of the evaluation, Appellant stated that she was a "bundle of nerves" in relation to appearing in court and feared that she "might say the wrong thing." She denied having committed the crimes.

**{¶17}** In his summary/opinion, Beazel concluded that Appellant's chronic anxiety and depression "may be related to the fact that she is aware of her intellectual limitations and the shortcomings that result from said limitations (as well as her efforts to hide/mask these limitations – sometimes not as well as she might like)." (Rep., p. 11.) Beazel acknowledged Appellant's "significantly lower than average intelligence," but he opined nonetheless "she does have the ability to understand complex issues – although she may require additional patience and less complex explanations." He further opined "[h]er anxiety also tends to limit her at times, and some repetition or more complex issues may be needed." Accordingly, Beazel concluded within a reasonable degree of psychological certainty that Appellant is capable of understanding the nature and objective of the proceedings and assisting in her own defense.

{¶18} At the competency hearing on October 31, 2018, Beazel was called by the defense and was the sole witness to offer testimony at the hearing. Beazel conceded that he was required to repeat his explanation of the role or function of a defense attorney five to ten times before Appellant understood the concept. (Competency Hrg. Tr., p. 8.) Beazel further conceded that Appellant had some difficulty verbalizing or clarifying her thoughts, and as a consequence, it was necessary to entreat Appellant to express herself more fully or completely.

{¶19} Beazel testified that Appellant may not understand certain terms at first, but she does have the intellectual ability to understand a concept if it is explained to her. Appellant's trial counsel inquired, "if I am understanding you correctly, when I talk to her about presumption of innocence, [I am] going to have to spend some time with her and explain to her what that is and ask her questions as to whether or not she understands what that means, and take some time doing that?" Beazel responded, "I agree." (*Id.*, p. 17.)

{¶20} However, later in his testimony, Beazel cautioned Appellant's trial counsel that Appellant may be inclined at times to say that she understands a concept that she does not understand. Therefore, he opined that additional effort beyond her initial affirmation is required to be certain that Appellant understands a concept. Beazel gave the example of the term "unanimity." (*Id.*, p. 18.)

{¶21} In a judgment entry dated November 13, 2018, the trial court concluded Appellant was competent to stand trial. The same day the judgment entry was filed, Appellant's trial counsel filed two motions – a motion to suppress Appellant's written confession and a motion for the administration of an instrument formulated by Thomas Grisso, Ph.D., which purports to assess a defendant's understanding and appreciation of the waiver of his or her rights guaranteed in *Miranda*. The motion to suppress alleges that Appellant's intellectual deficits prohibited her from knowingly waiving her right to remain silent. On November 26, 2018, the motions were set for a hearing on December 10, 2018.

{¶22} However, on December 4, 2018, Appellant was indicted for four counts of rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree; four counts of sexual battery in violation of R.C. 2907.03(A)(5), felonies of the second degree; and four counts

of gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree, in Case No. 18-CR-196.  The December 4, 2018 indictment restated the earlier charges, and added four new charges, all predicated upon Appellant's alleged molestation of her sons in 2010.

{¶23}  Case No. 18-CR-01 was dismissed on December 28, 2018.   The pending motions in Case No. 18-CR-01 were never refiled in Case No. 18-CR-196.

{¶24}  On September 5, 2019, Appellant entered a guilty plea pursuant to *Alford*, *supra*, to two counts of sexual battery (counts two and nine) and one count of gross sexual imposition (count one).  She was sentenced the same day.  Two attorneys were appointed to represent Appellant, and both appeared at the plea/sentencing hearing.

{¶25}  During the plea colloquy, one of Appellant's trial attorneys represented to the trial court that he engaged in his standard practice of reading the written plea agreement to Appellant prior to the hearing.  The trial court then asked Appellant to affirm her comprehension of the legal terms and the effect of the plea agreement, to which Appellant responded, "[y]eah," or "[y]eah, they explained it."  (Plea Hrg. Tr., p. 10.) Appellant responded affirmatively when the trial court asked if Appellant's trial counsel had reviewed evidence with her and if she was satisfied with their representation.

{¶26}  When the trial court reviewed the charges to which Appellant was entering her plea, Appellant became confused, prompting the trial court to advise Appellant's trial counsel to use the indictment as a guide:

MR. MARTELLO:    Do you understand what they're saying you did?

THE DEFENDANT: I guess gross sexual conduct. I don't know.

MR. MILLER:        Okay. What – what do you not understand?

THE DEFENDANT: I mean, I don't understand what [the trial court] is saying. What's the sexual –

MR. MILLER:        Of sexual battery, that you're –

THE DEFENDANT: What's the sexual battery? That's what I don't –

MR. MILLER: That you're the parent and you had sexual contact with your child. That's what they're saying you did.

THE DEFENDANT: Now I –

THE COURT: Who was less than 13 years of age.

THE DEFENDANT: Okay.

THE COURT: Tell you what, do you have a copy of the Indictment?

MR. MILLER: I do.

THE COURT: All right. If you could just turn to the counts that we're talking about so she can read along with me. Let's revisit Count One.

(Plea Hrg. Tr., p. 13-14.)

**{¶27}** Appellant acknowledged that her trial counsel had reviewed the indictment with her several times. (*Id.*, p. 14.) Later, when the trial court reviewed the charging language in each count, the trial court observed, "So it seems like that – this looks familiar to you." Appellant responded, "Yes." (*Id.*, p. 15.) When asked if viewing the written plea agreement while the trial court reviewed the charges allowed Appellant to "follow along," Appellant responded, "That helps, yes." (*Id.*, p. 15-16.) When asked if it was "perfectly clear then in [Appellant's] mind what [she was] being accused of," Appellant responded, "Yes." (*Id.*, p. 16.)

**{¶28}** With respect to the *Alford* aspect of the plea, the trial court engaged in the following colloquy:

THE COURT: I think I glossed over one area and I need to revisit this. Now, let's talk about this Alford plea. I read – the sections – the counts that you are going to plead guilty to and I need to make sure that you – that I'm clear about this. Now, are you entering your guilty plea to limit your possible penalty if you were found guilty by a jury?

THE DEFENDANT: Yeah.

THE COURT: All right. In other words, do you believe that the consequences of going to trial are too great when compared to the consequences under the plea agreement?

THE DEFENDANT: Yes.

THE COURT: All right. Are you entering this guilty plea as a compromise?

MR. MILLER: By an agreement.

THE DEFENDANT: Yeah.

THE COURT: All right. Are you entering this plea upon the advice of your attorney, is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Although you do not admit guilt today, you do wish to enter your plea as listed here in this plea form and you understand the Court will thereafter treat you like you are guilty if the Alford plea is accepted.

THE DEFENDANT: Yes, ma'am.

THE COURT: I'll treat you as if you were guilty. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Okay, Now, I understand that there is certainly sufficient evidence in the discovery on which a jury could base a finding of guilt; is that correct?

MR. BRUZZESE [PROSECUTOR]: Yes, Your Honor.

MR. MILLER:	Yes, Your Honor, and if I may --

THE COURT:	Yes.

MR. MILLER:	-- to supplement the record, in this case my client was called to the sheriff's department. There were some preliminary procedures of evidence gathering. Ultimately [Appellant] wrote a confession indicating inappropriate conduct, illegal conduct with the two ultimately victims in this case.

Given all the evidence, and in particular that written statement, there was no way to overcome it in the defense and that's the conclusion that we came to that would raise the great likelihood that she would be convicted based on that written confession.

THE COURT:	Okay. Additionally, the Court was made privy to – based on some pretrial motions the Court was in receipt of the medical records from the victims in this case, from their psychiatrist and psychologist and the Court has reviewed those by agreement of the parties. Both of you acknowledge that.

MR. MILLER:	Yes, Your Honor.

THE COURT:	And there certainly is – is evidence that would be presented at trial contained in those documents. Fair statement?

MR. BRUZZESE:	Yes, Your Honor.

THE COURT:	All right. Okay. Okay. All right. So the record is clear, the Court does make the findings that, in fact, her – [Appellant's] purposes for doing this, that she understands that it's a compromise and that there are certainly sufficient facts in which the jury could find a finding of guilt to substantiate the proof in this case beyond a reasonable doubt.

(*Id.,* p. 20-23.)

Case No. 20 JE 0016

{¶29} Appellant was sentenced immediately following the entry of her guilty plea. On August 13, 2020, Appellant filed the pro se post-judgment motion to withdraw her guilty plea. On September 9, 2020, Appellant filed a pro se petition to vacate or set aside judgment of conviction or sentence.

{¶30} Appellant filed her notice of appeal on September 24, 2020. On November 5, 2020, Appellant filed an affidavit of disqualification with the Supreme Court relating to the trial judge, which was denied on December 12, 2020. On March 15, 2021, the trial court summarily overruled the post-judgment motion to withdraw guilty plea.

{¶31} According to the docket, the trial court has not ruled on Appellant's petition. Appellant's counsel cites the factual allegations in the petition in support of his assignments of error. Because the petition is a collateral civil matter and not a part of the direct appeal, we do not consider the factual allegations in the appellate brief that are taken from the petition.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED BY FINDING APPELLANT TO BE COMPETENT TO STAND TRIAL.**

{¶32} The Ohio Supreme Court has held that "[f]undamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial." *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995). In *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the United States Supreme Court fashioned the test to determine if a criminal defendant is competent to stand trial, that is, whether the defendant has sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding – and whether she has a rational as well as factual understanding of the proceedings against her. *Id.*

{¶33} Ohio recognizes the right of a criminal defendant not to be tried or convicted of a crime while incompetent in R.C. 2945.37(B), which reads, in relevant part:

> In a criminal action in a court of common pleas, a county court, or a
> municipal court, the court, prosecutor, or defense may raise the issue of the
> defendant's competence to stand trial. If the issue is raised before the trial

has commenced, the court shall hold a hearing on the issue as provided in this section.

**{¶34}** R.C. 2945.37(G) reads:

A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

**{¶35}** The trial court's decision on competency will not be disturbed absent an abuse of discretion. *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 33. A trial court does not abuse its discretion if there was some reliable, credible evidence supporting its factual findings. *Id.*

**{¶36}** Appellant relies on the plea colloquy to demonstrate her lack of competence to understand the nature of the charges against her. Appellant argues that the trial court should have employed open-ended questions at the plea colloquy to ascertain Appellant's appreciation of the charges. Appellant asserts that the series of leading questions posed by the trial court, designed to illicit a "yes" or "no" response, created the very circumstance against which Beazel had cautioned. Based on Beazel's admonitions, Appellant concludes that we cannot determine from the record whether Appellant actually understood the plea colloquy or simply feigned understanding to conceal her intellectual deficits.

**{¶37}** Although Beazel acknowledged Appellant's intellectual deficits, he opined that she was able to understand complex principles as long as they were clearly and repeatedly explained to her. Further, Beazel cautioned the trial court and Appellant's trial counsel to repeat explanations of complex issues despite Appellant's representation that she understands the issue, and to encourage Appellant to express her thoughts due to her practice of attempting to conceal her intellectual deficits.

Case No. 20 JE 0016

{¶38} With the foregoing in mind, the trial court first confirmed that one of Appellant's trial attorneys had engaged in his customary practice of reading the written plea agreement in its entirety to Appellant. Next, the trial court reviewed each of the charges contained in the indictment with the Appellant.

{¶39} When Appellant indicated that she was having difficulty following the charges, the trial court instructed Appellant's trial counsel to use the indictment as a guide. Rather than resuming the colloquy at the point of the interruption, the trial court returned to the first charge and explained each of the three charges with the indictment as a guide.

{¶40} Contrary to Appellant's argument that the colloquy was at odds with the findings in Beazel's evaluation and his recommendations at the competency hearing, the record reflects that the trial court made certain that Appellant had reviewed the charges with trial counsel prior to the plea hearing and employed the indictment as a guide during the plea colloquy. The trial court inquired more than once about the number of times Appellant had reviewed the charges with trial counsel, and inquired repeatedly about Appellant's understanding of the charges. Further, Appellant expressly acknowledged her confusion during the trial court's recitation of the charges, which contravenes Appellant's argument that she was attempting to conceal her intellectual deficits at the hearing by feigning a complete understanding of the charges.

{¶41} Accordingly, we find that the first assignment of error has no merit because there is reliable, credible evidence in the record to support the trial court's legal conclusion, and as a consequence, the trial court did not abuse its discretion in finding that Appellant was competent to stand trial.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED BY ACCEPTING APPELLANT'S *ALFORD* PLEA BECAUSE IT WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE.**

{¶42} A standard guilty plea consists of a waiver of trial and an express admission of guilt; the express admission of guilt, however, is not constitutionally required. *Alford*, *supra*. The United States Supreme Court held a defendant can knowingly, intelligently,

and voluntarily consent to be sentenced without a trial "even if he is unwilling or unable to admit his participation in the acts constituting the crime" and even if he offers a "plea containing a protestation of innocence." *Id.* at 37, 91 S.Ct. 160.

**{¶43}** In *Alford*, the Court held a plea with a protestation of innocence can be upheld where the "defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.* The Court added:

> When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, * * * its validity cannot be seriously questioned. In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it.

*Id.* at 38, 91 S.Ct. 160; see also *State v. Post*, 32 Ohio St.3d 380, 387, 513 N.E.2d 754 (1987) ("no constitutional error was found in accepting a guilty plea which contained a protestation of innocence, if the defendant intelligently concludes that his interests require entry of a guilty plea and if the record before the court contains strong evidence of guilt").

**{¶44}** The United States Supreme Court cited with favor cases that "properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea * * * and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence." *Alford* at fn. 10, 91 S.Ct. 160.  A defendant may knowingly, intelligently, and voluntarily decide his interests are best served by entering a guilty plea while protesting his innocence where he fears the result of a jury trial and/or fears a longer sentence in the absence of the negotiated plea agreement. *State v. Hart*, 7th Dist. Belmont No. 14 BE 0025, 2016-Ohio-1008, 2016 WL 962475, ¶ 15.

**{¶45}** Therefore, in Ohio, an *Alford* plea is properly accepted where the record demonstrates: (1) the defendant's plea was not the result of coercion, deception or

intimidation; (2) defense counsel was present at the time the plea was entered; (3) defense counsel's representation was competent in light of the circumstances of the indictment; (4) the plea was entered with an understanding of the underlying charges; and (5) the defendant was motivated by a desire for a lesser penalty, a fear of the consequences of a jury trial, or both. *State v. LaBooth*, 7th Dist. Mahoning No. 15 MA 0044, 2017-Ohio-1262, ¶ 23, citing *State v. Piacella*, 27 Ohio St.2d 92, 271 N.E.2d 852 (1971), syllabus.

**{¶46}** Further, we have required a trial court accepting an *Alford* plea to find a factual basis in the record for the plea. An *Alford* plea cannot be accepted when the record fails to include facts upon which the trial court can resolve the conflict between the defendant's claim of innocence and her desire to plead guilty to the charges. For instance, we vacated the guilty plea in *State v. Redmond*, 7th Dist. Mahoning No. 17 MA 0068, 2018-Ohio-2778, where the prosecution presented no background to the charges and presented no facts or evidence, Redmond's counsel never stated any factual basis for the *Alford* plea, and Redmond did not stipulate to the prosecution's evidence. *Id.* at ¶ 14.

**{¶47}** Appellant argues that the trial court should have used open-ended questions in order to ascertain the motivation for Appellant's guilty plea. Instead, the trial court employed leading questions, designed to illicit a "yes" or "no" response. Appellant further argues that no factual basis for the plea was offered by the prosecution and no stipulation to the evidence by Appellant.

**{¶48}** The first three prongs of the *Alford* inquiry require a demonstration that Appellant's trial counsel was present at the plea colloquy, that he provided competent representation, and that he did not coerce, deceive, or intimidate Appellant into entering her plea. There is no evidence in the record to establish that Appellant's trial counsel coerced or deceived her with respect to the effect of her plea.

**{¶49}** Moreover, the use of leading questions by the trial court to establish the last two prongs of the *Alford* inquiry is less concerning than its use of leading questions to ascertain Appellant's understanding of the charges against her. The heightened *Alford* inquiry requires that the trial court establish Appellant's motivation for entering her plea,

specifically that Appellant was motivated by a desire for a lesser penalty and/or a fear of the consequences of a jury trial.

**{¶50}** The trial court inquired:

THE COURT:        Now, are you entering your guilty plea to limit your possible penalty if you were found guilty by a jury?

THE DEFENDANT: Yeah.

THE COURT:        All right.  In other words, do you believe that the consequences of going to trial are too great when compared to the consequences under the plea agreement?

(Plea Tr., p. 20-21.)

**{¶51}** The foregoing questions are relatively simple and easily understood. Accordingly, we find that the trial court fulfilled its obligation under the final two prongs of the *Alford* inquiry.

**{¶52}** Finally, the prosecution was obligated to demonstrate a factual basis for Appellant's plea, in order to explain the dissonance created by a defendant who maintains her innocence while entering a guilty plea.  Here, Appellant's counsel conceded that Appellant signed a written confession, and the trial court acknowledged that it had been privy to the two victims' medical reports.

**{¶53}** The trial court then inquired, "And there certainly is – is evidence that would be presented at trial contained in those documents.  Fair statement?" The prosecutor responded, Yes, Your Honor."  Then the trial court concluded, "So the record is clear, the Court does make the findings that, in fact, her – [Appellant's] purposes for doing this, that she understands that it's a compromise and that there are certainly sufficient facts in which the jury could find a finding of guilt to substantiate the proof in this case beyond a reasonable doubt."

**{¶54}** While the manner in which the facts were offered is unorthodox, that is, the prosecution did not provide a summary of the evidence to be adduced at trial, we find nonetheless that the record establishes a factual basis for Appellant's plea.  Although

Case No. 20 JE 0016

Appellant's written confession is not in the record, her trial counsel conceded to its existence. Likewise, the trial court recognized that the victim's medical reports contained evidence of Appellant's crimes. Insofar as Appellant admitted her desire to avoid the potential sentence based on the evidence in the record, we find that the trial court fulfilled the heightened standard for the *Alford* plea, and Appellant's second assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 3

### THE TRIAL COURT ERRED BY DENYING-- WITHOUT A HEARING-- APPELLANT'S MOTION TO WITHDRAW HER *ALFORD* PLEA.

{¶55} The decision to grant or deny a defendant's motion to withdraw a guilty plea is within the trial court's discretion. *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992). Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶56} Crim.R. 32.1 governs motions to withdraw guilty pleas and reads, "A motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶57} The motion to withdraw here is a post-sentence motion and can only be granted to correct a manifest injustice. The Ohio Supreme Court has defined "a manifest injustice" as a "clear or openly unjust act." *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998). This District has defined it as "an extraordinary and fundamental flaw in the plea proceedings." *State v.Threats*, 7th Dist. Jefferson No. 18 JE 0003, 2018-Ohio-3825 at ¶ 39. The burden of establishing the existence of a manifest injustice is on the party seeking to vacate the plea. *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). Post-sentence plea withdrawal is allowable only in an extraordinary case. *Id.*

{¶58} A trial court reviews the allegations in a motion to withdraw a guilty plea in order to determine whether to hold an evidentiary hearing on the motion. *State v.*

*Thompson,* 7th Dist. Mahoning No. 99 CA 211, 2003-Ohio-2380, ¶ 48. Generally, a trial court should conduct a hearing on the motion where "the facts alleged by the defendant and accepted as true would require the court to permit that plea to be withdrawn." *Id.*

**{¶59}** Appellant contends that the trial court erred in not conducing a hearing on the motion. Here, the motion contains conclusory allegations that Appellant's trial counsel coerced her into her plea. As a consequence, we find no manifest injustice occurred in this case.

## CONCLUSION

**{¶60}** In summary, we find that the trial court did not abuse its discretion when it found that Appellant understood the nature of the charges against her. We further find that the trial court fulfilled its obligation in accepting Appellant's *Alford* plea, and Appellant has failed to demonstrate that a manifest injustice occurred in this case. Accordingly, Appellant's convictions are affirmed.

Waite, J., concurs.

Robb, J., concurs.

―――――――――――――

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgments of the Court of Common Pleas of Jefferson County, Ohio, are affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**