[Cite as *State v. Satterwhite*, 2021-Ohio-2878.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-09-063 |
| | : | O P I N I O N |
| - vs - | | 8/23/2021 |
| | : | |
| ARNOLD LOVELL SATTERWHITE, JR., | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CR35541

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

William F. Oswall Jr., for appellant.

**BYRNE, J.**

{¶ 1}   Arnold Satterwhite appeals from his convictions for involuntary manslaughter and tampering with evidence.  Satterwhite argues that the Warren County Court of Common Pleas erred in accepting his *Alford* plea and that his defense counsel provided constitutionally defective performance.  For the reasons detailed below, we find no error in the trial court's acceptance of the plea, and we further conclude that the plea waived

Satterwhite's ineffective assistance of counsel claim.

### A.  Procedural and Factual Background

{¶ 2}  In May 2019, a Warren County grand jury indicted Satterwhite for involuntary manslaughter (first-degree felony), corrupting another with drugs (second-degree felony), two counts of trafficking (fifth-degree felonies), and tampering with evidence (third-degree felony).  The charges stemmed from allegations that Satterwhite sold the victim, Adam Marlow, the fentanyl-laced narcotics on which Marlow overdosed and died.

{¶ 3}  Prior to trial, Satterwhite moved to suppress statements he made during police questioning as having been obtained in violation of his *Miranda* rights.  In October 2019, the trial court held the suppression hearing.  The court heard testimony from Detective Wynne of the City of Mason Police Department.  Detective Wynn explained that detectives investigating Marlow's death recovered Marlow's cell phone, and in viewing his recent text messages, identified messages from an individual they believed sold Marlow narcotics.  Pretending to be Marlow, detectives continued texting with this individual, whom they later identified as Satterwhite.

{¶ 4}  Detectives subsequently interviewed Satterwhite at his place of employment.  Detective Wynn described the circumstances of the interview, and the state played an audio recording of the complete interview, which lasted approximately 25 minutes.  At the beginning of the interview, detectives obtained Satterwhite's cell phone. They also informed Satterwhite of his *Miranda* rights and had him sign a *Miranda* form at the end of the interview.  The detectives did not arrest Satterwhite but kept his cell phone.

{¶ 5}  Subsequently, the trial court issued a decision denying the motion to suppress on the basis that Satterwhite's questioning by police did not implicate *Miranda* as he was not in police custody.  Additionally, the court found that even if *Miranda* had applied, Satterwhite knowingly and voluntarily waived his *Miranda* rights*.*

{¶ 6} Satterwhite later filed a pro se motion to suppress evidence obtained from his cell phone. Satterwhite argued that the police illegally seized his cell phone without a warrant.

{¶ 7} Four days after filing the pro se motion to suppress, Satterwhite appeared before the trial court for a change of plea hearing. At the hearing, the court confirmed that Satterwhite intended to plead guilty to involuntary manslaughter and tampering with evidence. The plea form further indicated that the state had agreed to dismiss the remaining three counts of the indictment. The court informed Satterwhite that by pleading guilty to involuntary manslaughter he could face up to 11 years in prison, and that by pleading guilty to tampering with evidence, he could face up to 36 months in prison. However, the court indicated that, consistent with the parties' pretrial discussions, if Satterwhite did plead guilty, it was the court's intention to sentence him to only five years in prison, although this was not a joint and agreed sentence.

{¶ 8} The court then proceeded to engage Satterwhite in a Crim.R. 11 plea colloquy, informing him of the various constitutional rights he would forego by pleading guilty. At all times, Satterwhite acknowledged that he understood he was waiving these rights and it was his intention to do so.

{¶ 9} The court then asked the state to read into the record the facts of the offense. The prosecutor stated that the offense occurred on December 15, 2018, that Adam Marlow died after obtaining cocaine, heroin, and fentanyl and that Satterwhite had provided those drugs. The prosecutor further stated that Satterwhite had tampered with evidence sometime between the offense date and December 28, 2018 by deleting text messages between himself and Marlow, which text messages would have indicated that Satterwhite provided drugs to Marlow.

{¶ 10} The court asked whether Satterwhite agreed to the facts. Satterwhite nodded

his head negatively. Upon confirming that Satterwhite did not admit that the facts were true, the court informed him that he had the right to plead guilty whether he committed the crime or not and whether he would admit to the facts or not, and that this was called an *Alford* plea. However, the court indicated that it would need the prosecutor to describe the evidence the state would submit at trial to make a finding that there was substantial evidence of Satterwhite's guilt.

{¶ 11} The prosecutor then summarized the evidence the state would seek to admit at trial:

> State has text messages that went back and forth between our victim Adam Marlow and the defendant, where there was an arrangement to purchase drugs. Mr. Marlow believed he was obtaining one form of drug, apparently what the defendant sold him was something different. He then proceeded to take those drugs and overdosed on the date in question. He was found dead of an overdose and had cocaine and fentanyl within his system at the time of the overdose, which proceeded to be the cause of his death. Mason Police then proceeded to an investigation which led them through the text messages to the defendant as the provider of those drugs. Upon obtaining the cell phone of the defendant, there were messages that had existed with regard to Mr. Marlow's phone, between the defendant and him that the defendant had deleted from his phone and no longer existed at the time the police were able to obtain indicating that he had destroyed or attempted to destroy that evidence in order to prevent being prosecuted for these offenses.

{¶ 12} Upon hearing the prosecutor's description of the evidence, the court indicated that it would also consider the evidence submitted at the earlier suppression hearing. Based upon the prosecutor's representations and the suppression hearing, the court found that there was substantial evidence of Satterwhite's guilt. Accordingly, the court found that Satterwhite had made a knowing, voluntary, and intelligent choice to plead guilty and that the court would find Satterwhite guilty.

{¶ 13} At Satterwhite's subsequent sentencing hearing, the court sentenced him to

an aggregate sentence of five years in prison. Satterwhite appeals, raising two assignments of error.

### B. Legal Analysis

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED WHEN IT ACCEPTED SATTERWHITE'S PLEA AFTER SATTERWHITE DENIED GUILT, AND WHEN THE PLEA HEARING WAS NOT CONDUCTED PROPERLY UNDER ALFORD V. NORTH CARLONIA.

{¶ 16} Satterwhite argues that the trial court improperly accepted his plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970). Satterwhite contends that the court erred by failing to specifically inquire into whether he believed that it was in his best interest to enter a plea. He argues that it must be clear that he was "obviously aware of the risks of proceeding to trial" and that it was not clear from the evidence that his decision to plead was rationally calculated. Satterwhite specifically points to the lack of evidence in the record that his defense counsel recommended the plea and that the court did not engage in a discussion with him as to why he believed a plea was in his best interest, notwithstanding his denial of guilt.

### 1. The *Alford* Plea

{¶ 17} In *North Carolina v. Alford*, the United States Supreme Court held that a trial court may accept a guilty plea notwithstanding a defendant's claim of innocence "when * * * a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." 400 U.S. at 37. In such cases, there is a "heightened duty upon the trial court to ensure that the defendant's rights are protected and that entering the plea is a rational decision on the part of the defendant." *State v. Carey*, 3d Dist. Union No. 14-10-25, 2011-Ohio-1998, ¶ 7. Although an *Alford* plea allows a defendant to maintain his factual innocence, the plea has the same legal effect as

a guilty plea. *Carey* at ¶ 6.

{¶ 18} "Because pleas accompanied by protestations of innocence give rise to an inherent suspicion" that a plea may not have been knowing, voluntary, and intelligent, "*Alford* and the cases following it have made it clear that guilty pleas accompanied by an assertion of innocence should not be accepted unless there is a factual basis for the plea, and until the court accepting the plea has attempted to resolve the conflict between the waiver of trial rights and the assertion of innocence*." State v. Schmidt*, 3d Dist. Mercer No. 10-10-04, 2010-Ohio-4809, ¶ 14; *State v. Kirigiti*, 10th Dist. Franklin No. 06AP-612, 2007-Ohio-6852, ¶ 15, citing *State v. Padgett*, 67 Ohio App.3d 332 (2d Dist.1990). Where a defendant enters an *Alford* plea, "[t]he trial judge must ascertain that notwithstanding the defendant's protestations of innocence, he has made a rational calculation that it is in his best interest to accept the plea bargain offered by the prosecutor." *Padgett* at 338.

{¶ 19} However, in accepting an *Alford* plea, a trial court is not required to directly inquire of the defendant to determine whether he has made a rational calculation to plead guilty. *State v. Lacumsky*, 6th Dist. Ottawa No. OT-08-060, 2009-Ohio-3214, ¶ 9. In the absence of such an inquiry, there may be sufficient information before the trial court to determine that the defendant's decision to plead guilty notwithstanding an assertion of innocence was a rational decision. *Kirigiti* at ¶ 15.

{¶ 20} Under *Alford*, the standard for determining the plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." 400 U.S. at 31. The Ohio Supreme Court has determined that this standard is met "where the record affirmatively discloses that: (1) a guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) his advice was competent in light of the circumstances surrounding the plea; (4) the plea was made with the understanding of the nature of the charges; and, (5) the plea was

motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made." *State v. Piacella*, 27 Ohio St.2d 92, 96 (1971). A court must look at all the particular facts and circumstances surrounding the case to determine whether a defendant's plea was made voluntarily, intelligently, and knowingly. *State v. Carter*, 60 Ohio St.2d 34, 38 (1979), citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019 (1938).

{¶ 21} In *State v. Fetherolf*, 10th Dist. Franklin No. 19AP-129, 2019-Ohio-4176, the Tenth District Court of Appeals affirmed the trial court's acceptance of an *Alford* plea. There, the defendant was indicted on two counts of first-degree felony rape. *Id.* at ¶ 2. The defendant subsequently entered *Alford* pleas to two counts of second-degree felony sexual battery. The court accepted the pleas and subsequently imposed eight-year prison sentences, run consecutively, on both sexual battery counts. *Id.*[1]

{¶ 22} On appeal, Fetherolf argued that the court failed to engage him in an adequate colloquy to determine whether his *Alford* pleas were entered knowingly, intelligently, and voluntarily. Fetherolf contended that there was "an inadequate discussion of the benefits that might inure to him by entering an *Alford* plea." *Id.* at ¶ 11. The court of appeals rejected this argument, finding that "[t]he benefit to Fetherolf in pleading to lesser offenses was obvious—it removed the significant risk to him of going to trial and being convicted of the greater offenses." *Id.* The court further noted that the state had summarized the expected testimony of the 12-year-old victim, who had reported that the defendant had committed acts of digital penetration, thus supporting a conviction on the greater offenses. Accordingly, the court found that the trial court had sufficient information before it to determine that Fetherolf's decision to plead guilty to reduced charges of sexual battery was

---

1. The defendant had also been charged with other counts but entered traditional guilty pleas to those counts, as charged.

rational. *Id.*

{¶ 23} In *State v. Hughes,* 4th Dist. Highland No. 20CA2, 2021-Ohio-111, the Fourth District invalidated an *Alford* plea. There, the trial court had not requested "the basic facts surrounding the indictment and instead stated that it would 'proceed with sentencing immediately due to the nature of the offense and also I've reviewed the discovery and the Defendants [sic] prior record.'" *Id.* at ¶ 12. The record on appeal did not contain the state's discovery responses, and the state conceded at oral argument that it had not in fact provided its discovery to the court. Accordingly, the court of appeals was unable to ascertain whether the state's discovery contained strong evidence of the defendant's guilt. The court additionally noted that no bill of particulars had been filed in the case, which could have assisted the trial court in discerning the strength of the case. *Id.* The court held that the plea did not meet the heightened standards mandated under *Alford* because the record was "'devoid of a basic factual framework against which the trial court could weigh' Hughes's claims of innocence against his willingness to waive trial." *Id.* at ¶ 15, quoting *State v. Casale*, 34 Ohio App.3d 339, 340 (8th Dist.1986).

### 2. Analysis of Satterwhite's *Alford* Plea

{¶ 24} After a thorough review of the record, we find that the totality of the circumstances supports the conclusion that Satterwhite's plea was a voluntary, intelligent, and rationally calculated decision. At the outset of the plea hearing, the court stated:

> It is my understanding that Mr. Satterwhite is going to be entering a plea of guilty to the involuntary manslaughter and to the tampering with evidence * * * Mr. Satterwhite, if you enter a plea of guilty to this charge, it is the Court's intention to sentence you to five years in prison, which is sort of consistent with the discussions that we have had in pretrial * * *.

Satterwhite was represented by counsel at the hearing. Counsel agreed with the court's description of the understanding concerning Satterwhite's plea.

{¶ 25} The court next inquired of Satterwhite whether anyone had made any "threats, promises or representations to get you to plead guilty." Satterwhite confirmed that no one had. Satterwhite further confirmed that he had read and reviewed the plea form, which reflected all aspects of the guilty plea, including the plea to the two counts and the state's dismissal of the remaining counts. Satterwhite also acknowledged that he reviewed the plea form with his counsel before he signed it. The court then informed Satterwhite:

> You're going to be entering a plea of guilty to one count of involuntary manslaughter, one count of tampering with evidence. The involuntary manslaughter is a first degree felony. It's punishable by up to eleven years in prison and a $20,000 fine. The tampering with evidence is a third degree felony. It is punishable by up to thirty-six months in prison, and a $10,000 fine.

{¶ 26} Thus, the record affirmatively discloses that Satterwhite's plea was not the result of coercion, deception, or intimidation, was offered in the presence of counsel, and with the competent advice and assistance of counsel, and was offered with an understanding of the nature of the charges, and with knowledge of all salient aspects of the ramifications of the plea, including the potential maximum penalties and the court's agreement to sentence him to less than the maximum penalty. *Piacella* at 96.

{¶ 27} Unlike in *Hughes*, the record in this case also demonstrates that the trial court had the requisite factual basis before it to assess the strength of the state's case. The court heard testimony from Detective Wynn concerning how police were able to identify Satterwhite as the person who had supplied the narcotics that caused Adam Marlow's death. The court heard the initial police interview, in which Satterwhite admitted that he knew Marlow, that Marlow was looking for drugs, and that he had communicated with Marlow as well as the police officers posing as Marlow. During the interview, a police officer also described and read aloud many of the text messages exchanged between Satterwhite and Marlow (or police posing as Marlow), which were blatant drug-related communications,

including drug-related communications on the day of Marlow's overdose.

{¶ 28} The prosecutor also read into the record the anticipated evidence that would be introduced at a trial. That evidence included the text messages found on Marlow's phone evidencing a drug exchange and the absence of the incriminating text messages on Satterwhite's recovered phone, indicating a purpose to destroy or conceal evidence.

{¶ 29} Like in *Fetherolf*, the benefit to Satterwhite in pleading guilty was obvious. In pleading guilty to two counts of the indictment, the state was agreeing to dismiss the remaining three counts: a second-degree felony and two felony-five offenses. The dismissal of these counts removed a potential additional maximum sentence of eight years and 24 months in prison. R.C. 2929.14(A)(2)(b) and (A)(5). Moreover, the court represented to Satterwhite that, consistent with pretrial discussions, it intended to sentence him to five years in prison if he pled guilty as agreed. As he was made aware, Satterwhite faced a potential sentence of eleven years on the involuntary manslaughter charge and thirty-six months on the tampering charge. R.C. 2929.14(A)(1)(b) and (A)(3). Thus, there was an obvious and substantial benefit to Satterwhite in entering the guilty plea. The record supports the conclusion that Satterwhite's plea was "motivated * * * by a desire to seek a lesser penalty." *Piacella*, 27 Ohio St.2d at 96.

{¶ 30} Satterwhite cites *State v. Padgett*, 67 Ohio App 3d 332 (2nd Dist.1990), and *State v. Gossard*, 2nd Dist. Montgomery No. 19494, 2003-Ohio-3770, for the proposition that the court erred in accepting his *Alford* plea when it did not specifically question him or his counsel as to why they believed it was in his best interest to enter the plea. However, neither *Alford* nor *Piacella* created any affirmative duty on a trial court to question the defendant concerning the motivation to plead. Other courts have specifically rejected the argument that a court must directly inquire of a defendant to determine whether he or she has made a rational calculation to plead guilty. *Lacumsky*, 2009-Ohio-3214, at ¶ 9.

{¶ 31} We agree that it could be beneficial to have the defendant explain, or defense counsel put on record, the rationale for entering an *Alford* plea. As a matter of best practice, then, trial courts should consider questioning defendants or their counsel on the record regarding their rationale for entering an *Alford* plea. However, such an inquiry is not necessarily required, especially in a case such as this where the state's evidence against Satterwhite was so strong, and the benefit to pleading guilty to less than all charges for less than the maximum penalty was so obvious. In a different case, where the evidence is questionable, or the benefit of the plea not so obvious, such an inquiry could resolve any potential issues in determining the rationality of the plea.

{¶ 32} Based on the foregoing analysis, we find that the trial court possessed sufficient information to assess the voluntariness of Satterwhite's plea notwithstanding his refusal to agree to the facts. The record supports the trial court's conclusion that Satterwhite's plea was a rational, calculated decision. We overrule Satterwhite's first assignment of error.

{¶ 33} Assignment of Error No. 2:

{¶ 34} SATTERWHITE'S CONVICTION MUST BE REVERSED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 35} Satterwhite contends that his counsel provided constitutionally deficient performance by failing to move to suppress the evidence obtained as a result of the "unlawful seizure" of his cell phone. Satterwhite argues that there was no testimony at the suppression hearing justifying a warrantless seizure of the cell phone and therefore, there was no reason not to proceed to move to suppress the cell phone.

{¶ 36} Satterwhite's *Alford* plea has the same legal effect as a guilty plea. *Carey*, 2011-Ohio-1998, ¶ 6. "A defendant who pleads guilty also waives the right to claim ineffective assistance of counsel, except to the extent that counsel's deficient performance

caused the plea to be less than knowing and voluntary * * *." *State v. Moxley*, 12th Dist. Madison No. CA2011-06-010, 2012-Ohio-2572, ¶ 18. Satterwhite does not argue that the failure to move to suppress based on the cell phone seizure caused his plea to be less than knowing and voluntary. Significantly in this regard, Satterwhite appeared for the change of plea hearing only four days after filing his own pro se motion to suppress. Satterwhite's abandonment of his own motion underscores the fact that it did not affect his decision to plead. Accordingly, based upon our resolution of Satterwhite's first assignment of error, we conclude that Satterwhite's *Alford* plea waived the right to claim ineffective assistance of counsel.

{¶ 37} Even if he had not waived the argument, we note that the failure to file a motion to suppress does not constitute per se ineffective assistance of counsel. *State v. Smith*, 12th Dist. Fayette No. CA2014-05-013, 2015-Ohio-1094, ¶ 44. To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must be able to prove that there was a basis for suppression of the evidence in question. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65. Even when there is some evidence in the record to support a motion to suppress, "an appellate court presumes that defense counsel was effective if defense counsel could reasonably have decided that the motion to suppress would have been futile." *State v. Dominguez*, 12th Dist. Preble No. CA2011-09-010, 2012-Ohio-4542, ¶ 20.

{¶ 38} Had Satterwhite not waived the right to claim ineffective assistance, we would still not be able to determine, on this record, whether counsel provided deficient representation. The record is simply undeveloped concerning how the cell phone was transferred to police control, i.e., whether it was involuntarily seized, or whether Satterwhite surrendered it voluntarily. The audio recording of the interview does reflect that Satterwhite voluntarily provided police with his passcode to open the phone. Regardless, on this record,

- 12 -

we can only presume that counsel reasonably determined that a motion to suppress would have been futile. Satterwhite's decision to abandon his pro se motion to suppress in favor of pleading bolsters this conclusion. Consequently, we overrule Satterwhite's second assignment of error.

{¶ 39} Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.