[Cite as *State v. Heiser-Mullins*, 2024-Ohio-5360.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-04-022 |
| | : | O P I N I O N |
| - vs - | | 11/12/2024 |
| | : | |
| SEAN PATRICK HEISER-MULLINS, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case Nos. 23CR40888 and 23CR41151


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Engel & Martin, LLC, and Joshua A. Engel, for appellant.



**HENDRICKSON, J.**

{¶ 1}   Appellant, Sean Patrick Heiser-Mullins, appeals from his convictions in the Warren County Court of Common Pleas for the illegal conveyance of drugs of abuse onto the grounds of a government facility and the possession of a deadly weapon while under detention.  For the reasons set forth below, we find no error in the trial court's acceptance of an *Alford* plea to the charge of possession of a deadly weapon while under detention

and affirm his convictions.

{¶ 2} On August 21, 2023, appellant, an inmate at Warren Correctional Institution (WCI), was indicted in Case No. 23CR40888 on one count of the illegal conveyance of drugs of abuse onto the grounds of a specified government facility in violation of R.C. 2921.36(A)(2), a felony of the third degree, and one count of trafficking in drugs in violation of R.C. 2925.03(A)(2), a felony of the fifth degree. The charges arose out of allegations that on July 9, 2023, appellant illegally brought the drug buprenorphine into the prison.

{¶ 3} On November 13, 2023, appellant was indicted in Case No. 23CR41151 on one count of possession of a deadly weapon while under detention in violation of R.C. 2923.131(B), a felony of the second degree. The charge arose out of allegations that on October 12, 2023, while appellant was incarcerated at WCI for engaging in a pattern of corrupt activity, a felony of the first degree, he was found in possession of a shank during a pat down by a corrections officer.

{¶ 4} Following plea negotiations, appellant agreed to plead guilty to the illegal conveyance of drugs of abuse onto the grounds of a correctional facility and possession of a deadly weapon while under detention in consideration for the dismissal of the trafficking in drugs charge. At the plea hearing, appellant expressed to the trial court that he felt pressure to plead guilty to the possession of a deadly weapon while under detention charge because video of the incident had been destroyed and was not available for his defense. Appellant claimed, "There's some videos that they say that don't exist anymore. I would have – I would have went to trial if they would have had the video. If they would have had the video – if he [defense counsel] would have been able to get the thing, I would have went to trial."

{¶ 5} According to appellant, video from WCI would have shown him sitting in the dayroom of the prison, talking to a fellow inmate when two gang members walked up

behind him, shoved something in his hand, and told him to put it in his pocket. According to appellant, the item that was handed to him was the shank.[1] Appellant claimed he had the shank in his possession for no more than ten seconds when a corrections officer asked what he had been handed. Appellant claimed he would have gone to trial if he had access to the video.

{¶ 6} The trial court questioned the state and defense counsel about the video. The state indicated that at the time appellant was arrested for possession of a deadly weapon while under detention, appellant had not made a statement indicating video from the dayroom was relevant to the charge. Therefore, the video had not been saved.[2]

{¶ 7} Defense counsel advised the court that he had sought the dayroom video in a supplemental discovery request. However, counsel explained, "even with the video, based on all the other discovery that I got and passed along to [appellant], an open plea is the best resolution for the case." Counsel did not believe that the video would have made "any appreciative difference" in the case, and he acknowledged that supplemental discovery included a statement from appellant that "wasn't consistent with what [appellant is] saying here."

{¶ 8} Due to his concerns about the possession of a deadly weapon while under

---

1. During the plea hearing, appellant claimed the shank was "toenail clippers wrapped in a sheet." Later, at sentencing, he described the shank as a "knife." At all times the state has maintained that the shank was "an improvised deadly weapon. . . capable of causing death."

2. The state advised the Court as follows:

> Your Honor, everything that the [defendant] just said – the defendant just said, he did not make a statement at the time he was arrested. And as I explained to defense counsel . . . we don't have a reason to preserve the video. The prison doesn't think that there's something there. I contacted – I spoke with the investigator and the video was not saved. What they're asking for is a video of the dayroom where it was. The video was not saved. They had no reason to think that there was something on it of value at the time. So I communicated to defense counsel, I don't have the thing that he is asking for.

detention charge, appellant entered an *Alford* plea to that charge. The trial court explained to appellant that an *Alford* plea "is when you state I deny the charges, but I admit that they possess evidence that if believed by a jury I would be convicted." Appellant responded, "Yes, sir, that's what I want to do." The trial court proceeded to conduct a Crim.R. 11(C) plea colloquy, advising appellant of the various constitutional rights he would be foregoing by entering his plea. At all times, appellant acknowledged he understood he was waiving these rights and it was his intention to do so. Appellant pled guilty on the illegal conveyance of drugs charge in Case No. 23CR40888 and entered an *Alford* plea to the possession of a deadly weapons charge in Case No. 23CR41151.

{¶ 9} After appellant entered his *Alford* plea, the following discussion then occurred between the trial court and the state as to what evidence the state would have presented if the case had proceeded to trial.

> THE COURT: [O]n the case . . . 23CR41151, what evidence would the State present at trial?
>
> [Prosecutor]: Your Honor, if the case were to proceed to trial, the State would produce evidence beyond a reasonable doubt that on October the 12th of 2023 the defendant at that time was incarcerated at Warren Correctional Institution. The most serious charge in which he was incarcerated for is a felony of the first degree, engaging in a pattern of corrupt activity as well as additional major felony charges.
>
> At that time Corrections Officer Lypski, did a pat down of him and recovered from his possession an improvised deadly weapon often called a shank capable of causing death.
>
> THE COURT: Okay. Do you have any other information on how the – how he came into possession of that?
>
> [Prosecutor]: There's nothing in the report other than indicates [sic] that there was a safety pat down of the inmate, so there's nothing else that corroborated the defendant's account of that.
>
> THE COURT: Okay. And where did this occur?

- 4 -

[Prosecutor]: At Warren Correctional Institution here in Warren County.

. . .

THE COURT: All right. I make a finding of guilty on the illegal conveyance charge. Find it to be a knowing and voluntary waiver of constitutional rights. Based on the statement of the prosecutor as to the *Alford* plea, I make a finding of guilty. . . .

The court subsequently sentenced appellant to three to four and one-half years in prison on the possession of a deadly weapon charge in Case No. 23CR41151 and to 18 months in prison on the illegal conveyance of drugs of abuse in Case No. 23CR40888, and it ordered that those prison terms be served consecutively to one another and consecutively to the prison term that appellant was already serving.

{¶ 10} Appellant appealed, raising the following as his sole assignment of error:

{¶ 11} DEFENDANT-APPELLANT'S GUILTY PLEA, ENTERED PURSUANT TO *NORTH CAROLINA V. ALFORD*, 400 U.S. 25 (1970), WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE BECAUSE THE TRIAL COURT FAILED TO UNDERTAKE THE HEIGHTENED INQUIRY ANNOUNCED IN *ALFORD*.[3]

{¶ 12} Appellant argues his guilty plea was not knowingly, voluntarily, or intelligently made because the trial court "did not reach the standard of heightened inquiry" required for an *Alford* plea. Specifically, appellant contends the trial court should have required the state to set forth additional information about what the evidence at trial would have consisted of had appellant not entered his plea. He further contends the court's inquiry was "insufficient because it failed to consider whether the government's

---

3. Appellant appealed his convictions in both Case Nos. 23CR40888 and 23CR41151. However, appellant's appellate brief does not raise any assignments of error challenging his guilty plea for the illegal conveyance of drugs of abuse onto the grounds of a specified government facility. Since we do not have an assignment of error to resolve relating to Case No. 23CR40888, the trial court's judgment in that case is hereby affirmed. *See State v. Rojas*, 2024-Ohio-2209, ¶ 71, fn. 6; *State v. Flack*, 2024-Ohio-4622, ¶ 14, fn. 1.

failure to preserve evidence amount[ed] to a due process violation."

{¶ 13} In *North Carolina v. Alford*, the United States Supreme Court held that a trial court may accept a guilty plea notwithstanding a defendant's claim of innocence "when . . . a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." 400 U.S. at 37. "In such cases, there is a 'heightened duty upon the trial court to ensure that the defendant's rights are protected and that entering the plea is a rational decision on the part of the defendant.'" *State v. Satterwhite*, 2021-Ohio-2878, ¶ 17 (12th Dist.), quoting *State v. Carey*, 2011-Ohio-1998, ¶ 7 (3d Dist.). "Although an *Alford* plea allows a defendant to maintain his factual innocence, the plea has the same legal effect as a guilty plea." *Id.*, citing *Carey* at ¶ 6.

{¶ 14} Because pleas accompanied by protestations of innocence give rise to an inherent suspicion that a plea may not have been knowing, voluntary, and intelligent, "*Alford* and the cases following it have made it clear that guilty pleas accompanied by an assertion of innocence should not be accepted unless there is a factual basis for the plea, and until the court accepting the plea has attempted to resolve the conflict between the waiver of trial rights and the assertion of innocence." *State v. Kirigiti*, 2007-Ohio-6852, ¶ 15 (10th Dist.), citing *State v. Padgett*, 67 Ohio App.3d 332 (2d Dist. 1990). Therefore, "[a]n *Alford* plea cannot be accepted when the record fails to include facts upon which the trial court can resolve the conflict between the defendant's claim of innocence and [his] desire to plead guilty to the charges." *State v. Kerns*, 2023-Ohio-517, ¶ 46 (7th Dist.).

{¶ 15} "Where a defendant enters an *Alford* plea, '[t]he trial judge must ascertain that notwithstanding the defendant's protestations of innocence, he has made a rational calculation that it is in his best interest to accept the plea bargain offered by the prosecutor.'" *Satterwhite* at ¶ 18, quoting *Padgett* at 338. "However, although it may be

a matter of best practice for a trial court to do so, 'in accepting an *Alford* plea, a trial court is not required to directly inquire of the defendant to determine whether he has made a rational calculation to plead guilty.'" *State v. Frazier*, 2024-Ohio-2114, ¶ 23 (12th Dist.), quoting *Satterwhite* at ¶ 19. There is also no "affirmative duty on a trial court to question the defendant concerning the [defendant's] motivation" to accept the state's plea offer and enter an *Alford* plea. *Satterwhite* at ¶ 30. This is because, "[i]n the absence of such an inquiry, there may be sufficient information before the trial court to determine that the defendant's decision to plead guilty notwithstanding an assertion of innocence was a rational decision." *Id.* at ¶ 19.

{¶ 16} "Under *Alford*, the standard for determining the plea's validity is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* at ¶ 20, quoting *Alford*, 400 U.S. at 31. The Ohio Supreme Court has determined that this standard is met "where the record affirmatively discloses that: (1) a guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) his advice was competent in light of the circumstances surrounding the plea; (4) the plea was made with the understanding of the nature of the charges; and, (5) the plea was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made." *State v. Piacella*, 27 Ohio St.2d 92, 96 (1971). A court must look at all the particular facts and circumstances surrounding the case to determine whether a defendant's plea was made voluntarily, intelligently, and knowingly. *State v. Carter*, 60 Ohio St.2d 34, 38 (1979), citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

{¶ 17} After a thorough review of the record, we find that the totality of the circumstances supports the conclusion that appellant's plea was a voluntary, intelligent, and rationally calculated decision. At the outset of the plea hearing, the terms of the

negotiated plea were set forth: appellant would plead guilty in Case No. 23CR41151 to one count of possession of a deadly weapon while under detention and plead guilty in Case No. 23CR40888 to one count of the illegal conveyance of drugs of abuse onto the grounds of a specified government facility in exchange for the state dismissing the count of trafficking in drugs. There was not an agreement as to sentencing in either case; rather, sentencing was to be left to the trial court's discretion. Appellant, however, was informed of the maximum penalty he faced on each charge and of the court's ability to run the sentences consecutively.

{¶ 18} The court questioned appellant as to whether he was entering the plea of his own free will and whether he felt pressure from anyone to enter the plea. Though appellant stated he was entering the plea of his own free will, appellant indicated he felt pressure to enter the plea due to missing video evidence relating to the possession of a deadly weapon charge. The record reflects the court addressed the missing video evidence with the state, defense counsel, and appellant. In doing so, the court was advised that after appellant was found in possession of a shank, he gave a statement to investigators that did not match his in-court claim that two gang members had handed the weapon to him in the dayroom at WCI with instructions to put in his pocket mere moments before a corrections officer found him in possession of the weapon. Because appellant's previous version of events did not implicate the relevance of the dayroom video, WCI had not saved the video recording. Defense counsel then advised the court that the video would not have made "any appreciative difference" in the case and "based on all the other discovery . . . an open plea is the best resolution for the case." The "other discovery" referenced by counsel included a statement from appellant that "wasn't consistent with what [appellant is] saying here."

{¶ 19} Contrary to appellant's claim, the trial court was provided with facts upon

which it could resolve the conflict between the defendant's claim of innocence and his desire to plead guilty to the charges. The prosecutor explained that if the case went to trial, the state would produce evidence that On October 12, 2023, while incarcerated at WCI on a first-degree felony offense of engaging in a pattern of corrupt activity, appellant was found in possession of a shank, an improvised deadly weapon capable of causing death, during a pat down by a corrections officer. In addition to this evidence, the state also possessed a statement appellant gave investigators about the incident, which was inconsistent with his later claims that he had been handed the shank by gang members mere moments before he had been found in possession of the deadly weapon. The court was therefore provided with a factual basis to support appellant's decision to enter an *Alford* plea.

{¶ 20} Additionally, the benefit to appellant in pleading guilty was obvious. He was motivated by a desire to seek a lesser penalty and his fear of the consequences of a jury trial. *See e.g., Satterwhite*, 2021-Ohio-2878 at ¶ 29; *Frazier*, 2024-Ohio-2114 at ¶ 27. Pursuant to the terms of the negotiated plea, in exchange for pleading guilty to possession of a deadly weapon while under detention and the illegal conveyance of drugs of abuse onto the grounds of the correctional facility, the state agreed to dismiss another felony charge—the trafficking in drugs charge. This fifth-degree felony charge carried an additional prison term of between six to twelve months. Appellant's guilty plea permitted him to avoid an additional prison term.

{¶ 21} The record establishes that appellant's decision to enter an *Alford* plea was knowingly, intelligently, and voluntarily made given the other alternative courses of action available to him. The record further discloses that appellant's decision to enter an *Alford* plea to the charge of possession of a deadly weapon while under detention was not the result of coercion, deception, or intimidation, that appellant's trial counsel was present at

the time appellant entered his plea, and that trial counsel's recommendation for appellant to enter an *Alford* plea was competent when considering the circumstances surrounding the indictment and the anticipated evidence that the state would introduce against him at trial. The record further demonstrates that appellant entered his plea with the understanding of the charges levied against him, the rights he was waiving by entering his plea, and the maximum potential penalty he faced on the offense. In short, the record reflects the trial court complied with the heightened inquiry required by *North Carolina v. Alford*, 400 U.S. 25.

{¶ 22} In finding that the court complied with the heightened inquiry required by *Alford*, we reject appellant's claim that the court was required to consider whether the government's failure to preserve the video recording of WCI's dayroom amounted to a violation of appellant's due process rights. This issue was not raised in the trial court and appellant has not claimed on appeal that his trial counsel was ineffective for failing to raise the issue. The issue, therefore, is not properly before us. *See State v. Marshall*, 2024-Ohio-4445, ¶ 26 (12th Dist.) ("It is well-settled that issues not raised in the trial court may not be raised for the first time on appeal.").

{¶ 23} However, even if it were properly raised, appellant's argument is without merit. In considering whether the failure to preserve evidence implicates due process, "the threshold question is: what is the nature of the evidence in question? Was the evidence 'materially exculpatory' or merely 'potentially useful?'" *State v. Kirby*, 2020-Ohio-4005, ¶ 12 (12th Dist.), quoting *State v. Powell*, 2012-Ohio-2577, ¶ 73. "To be materially exculpatory, the evidence must possess an apparent 'exculpatory value' before it was lost, and the defendant must be unable to obtain comparable evidence by other reasonably available means." *Id.*, citing *Powell* at ¶ 74. *See also California v. Trombetta*, 467 U.S. 479, 489 (1984). "If the evidence is materially exculpatory, it is immaterial

whether the government acted in good or bad faith by failing to preserve the evidence, the loss amounts to a violation of the defendant's right to due process of law." *Id.*, citing *State v. Hamilton*, 2015-Ohio-1704, ¶ 10 (12th Dist.). The burden of showing that the evidence was materially exculpatory lies with the defendant. *Powell* at ¶ 74.

{¶ 24} A different rule applies when the evidence is merely "potentially useful." *State v. C.J.*, 2018-Ohio-1258, ¶ 15 (12th Dist.). "Where the evidence is only 'potentially useful' the defendant must show that the government acted in bad faith for the loss of the evidence to constitute a due process violation." *Kirby* at ¶13. "Bad faith implies more than bad judgment or negligence; rather, it imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through an ulterior motive, or ill will partaking of the nature of fraud." *Id.*, citing *Powell* at ¶ 81. "If a defendant cannot demonstrate the government acted in bad faith when it failed to preserve 'potentially useful' evidence, then the loss of the evidence does not amount to a violation of his due process rights." *Id.*, citing *State v. Lazier*, 2013-Ohio-5373, ¶ 11 (12th Dist.).

{¶ 25} We find that appellant has failed to establish that the dayroom video constituted materially exculpatory evidence. There is nothing to suggest that the video possessed apparent exculpatory value before it was deleted by WCI. The only indication the video was of any relevance came from a statement appellant made months after the incident, after the video had already been deleted. This statement contradicted earlier statements appellant made about the incident. Furthermore, appellant could obtain comparable evidence by other reasonably available means. Specifically, appellant could call witnesses to testify about the events that occurred in the dayroom. In addition to the two gang members who allegedly handed the shank to appellant moments before the corrections officer patted him down, appellant indicated another inmate had been present when the handoff occurred.

{¶ 26} At best, the dayroom video constituted "potentially useful" evidence. As such, appellant must show that the state acted in bad faith in deleting the video in order for the loss of the evidence to constitute a due process violation. Appellant cannot meet this burden. The record reveals that the dayroom video was not preserved because the prison and investigators had not been made aware of the video's alleged evidentiary value. As appellant's prior statements to investigators did not implicate the dayroom video, appellant cannot demonstrate the state or WCI acted with conscious wrongdoing or with ill will in not preserving the video. Appellant's due process rights were not violated by the state's failure to preserve the dayroom video and the trial court did not err in accepting appellant's *Alford* plea to the charge of possession of a deadly weapon while under detention under the facts presented in this case.

{¶ 27} Accordingly, for the reasons discussed above, we find that in accepting appellant's *Alford* plea, the trial court complied with its heightened duty of ensuring appellant's rights were protected. The trial court possessed sufficient information to access the voluntariness of appellant's plea notwithstanding his refusal to agree to the facts, and the record supports the trial court's conclusion that appellant's *Alford* plea was a rational calculated decision. We therefore overrule appellant's sole assignment of error.

{¶ 28} Judgment affirmed.

BYRNE, P.J., and M. POWELL, J., concur.