[Cite as *State v. Noble*, 2026-Ohio-2128.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2025-10-091<br>CA2025-10-092 |
| vs. | : | OPINION AND<br>JUDGMENT ENTRY<br>6/8/2026 |
| JOHN MARTIN NOBLE, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 24CR42027

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Johnna M. Shia, for appellant.

# **O P I N I O N**

**SIEBERT, J.**

{¶ 1}   Appellant, John Noble, appeals his convictions in the Warren County Court of Common Pleas following his *Alford* pleas to multiple drug-related offenses. On appeal,

Noble challenges the validity of his *Alford* pleas, argues that he received ineffective assistance of counsel, and contends that his sentence is contrary to law. Finding no merit to any of Noble's arguments, we affirm the judgment of the trial court.

**I. Facts and Procedural Background**

{¶ 2}   On April 8, 2024, law enforcement officers and emergency personnel responded to Noble's residence after receiving a report of a medical emergency. Upon arrival, first responders determined that Noble had suffered a stroke and had collapsed inside the residence.

{¶ 3}   While inside the home, deputies with the Warren County Sheriff's Office observed suspected methamphetamine packaged in multiple individual baggies in the kitchen, along with two methamphetamine pipes and three digital scales. Officers also observed a Ruger .380 handgun in a bedroom.

{¶ 4}   On September 23, 2024, Noble was indicted in Warren County Case No. 24CR42027 ("First Case") on four offenses, and a warrant was issued for his arrest. The indictment charged the following offenses:

First Case

| Count | Offense/Level | Relevant Facts |
|-------|---------------|----------------|
| 1 | Aggravated Trafficking (F2), R.C. 2925.03(A)(2), with firearm and forfeiture specifications | *Alford* plea |
| 2 | Aggravated Possession (F2), R.C. 2925.11(A), with forfeiture specification | Dismissed in exchange for plea |
| 3 | Having Weapons While Under Disability (F3), R.C. 2923.13, with forfeiture specification | *Alford* plea |
| 4 | Possession of Criminal Tools (F5), R.C. 2923.24 | Dismissed in exchange for plea |

{¶ 5}  On September 26, 2024, deputies executed the arrest warrant arising from the First Case. Noble answered the door and was taken into custody. Noble requested permission to reenter the residence to retrieve his cell phone, and deputies accompanied him inside. Noble consented to the deputies' entering the residence and informed them that methamphetamine was sitting on the kitchen table. After receiving *Miranda* warnings, Noble consented to a search of the residence, during which officers discovered additional narcotics.

{¶ 6}  On January 21, 2025, a Warren County Grand Jury returned a second indictment against Noble in Warren County Case No. 25CR42359 ("Second Case"), charging him with five additional offenses.

Second Case

| Count | Offense/Level | Relevant Facts |
|---|---|---|
| 1 | Aggravated Trafficking (F2), R.C. 2925.03 | *Alford* plea, 46.7 grams, Schedule II |
| 2 | Aggravated possession (F2), R.C. 2925.11 | Dismissed in exchange for plea |
| 3 | Aggravated trafficking in amphetamine (F2), R.C. 2925.03 | *Alford* plea, 18.65 grams, Schedule II |
| 4 | Aggravated possession (F2), R.C. 2925.11 | Dismissed in exchange for plea |
| 5 | Possession of Criminal Tools (F5), R.C. 2923.24 | Dismissed in exchange for plea |

{¶ 7}  On July 15, 2025, the trial court conducted a change-of-plea hearing in both cases. In the First Case, Noble entered *Alford* pleas to aggravated trafficking in drugs, including the attached specifications, and to having weapons while under disability, along with the related specifications. In the Second Case, Noble also entered *Alford* pleas to

- 3 -

two counts of aggravated trafficking in drugs.

{¶ 8}   At the outset of the hearing, the trial court addressed Noble regarding his pleas, stating "[a]ll right. Mr. Noble, they're telling me that you're going to be entering an *Alford* plea to the charges—certain charges from each of the indictments. Before I get to that plea, I'm going to need to go over some things with you." The court then conducted a plea colloquy during which it inquired into Noble's age, education, and whether anyone had threatened him or promised him anything in exchange for the pleas. The court further confirmed that Noble was not under the influence of drugs, alcohol, or medication that would impair his understanding and that he was satisfied with counsel's representation.

{¶ 9}   The trial court also advised Noble of the maximum penalties associated with the offenses, explained the applicability of the Reagan Tokes Law, and informed him that he would be subject to postrelease control upon his release from prison. In addition, the court reviewed the constitutional rights Noble would waive by entering the pleas. Noble indicated that he understood.

{¶ 10} The State then recited the factual basis supporting the charges. With respect to the First Case, the State explained that officers responded to Noble's residence on April 8, 2024, in connection with a reported medical emergency. While inside the residence, deputies observed suspected methamphetamine packaged in multiple baggies on the kitchen counter. Officers subsequently obtained a search warrant and recovered ten plastic bags containing suspected methamphetamine from the kitchen table, multiple baggies commonly used for drug packaging, two methamphetamine pipes, three digital scales, and a Ruger .380 handgun located in a bedroom. Laboratory testing later confirmed the substance to be 35.76 grams of methamphetamine.

{¶ 11} As to the Second Case, the State explained that officers returned to the

residence on September 26, 2024, to execute an arrest warrant related to the First Case. Noble answered the door and was taken into custody. He then requested permission to reenter the residence to retrieve his cell phone and was accompanied inside by officers. While inside, Noble informed the officers that methamphetamine was present in the residence. Officers observed methamphetamine in plain view on the kitchen table, and Noble confirmed that the substances were methamphetamine. After being advised of his *Miranda* rights, Noble gave verbal consent to search the residence. Officers recovered a brown box containing additional baggies of suspected methamphetamine and unidentified orange pills from the kitchen table. Subsequent laboratory testing confirmed the substances to be 46.7 grams of methamphetamine and 18.65 grams of amphetamine.

{¶ 12} Following the State's recitation of the facts, defense counsel advised the court that Noble "does not dispute the facts as stated," but was tendering an *Alford* plea. In light of the plea, the trial court personally addressed Noble and explained the nature of an *Alford* plea. Specifically, the court explained that by entering such a plea, Noble would maintain his innocence while acknowledging that the State possessed sufficient evidence for a judge or jury to find him guilty.

{¶ 13} The court further advised Noble that he retained the right to proceed to trial, noting that the matter was scheduled for trial that day, that he was entitled to a jury trial, and that he would not be penalized for exercising that constitutional right. Noble confirmed that he understood. The court then asked whether he wished to proceed based upon counsel's advice regarding an *Alford* plea, to which Noble responded, "[a]s an *Alford* plea, correct." Noble thereafter entered his pleas, and the court accepted them as knowingly, intelligently, and voluntarily made.

{¶ 14} The trial court subsequently ordered a presentence investigation and

conducted a sentencing hearing on September 4, 2025. During allocution, Noble asserted that the drugs were not his, claimed he had been "set up," but also suggested that the substances were intended for medical purposes. The trial court addressed those statements, noting that drugs had been discovered on two separate occasions and observing that methamphetamine "has no medical purpose."

{¶ 15} The court further stated that it had considered the record, the presentence-investigative report, the purposes and principles of felony sentencing, and the relevant seriousness and recidivism factors. In the First Case, the court imposed an aggregate indefinite prison term of eight-to-eleven years. In the Second Case, the court imposed an aggregate indefinite prison term of six-to-nine years. The court ordered the sentences in the two cases to be served consecutively, resulting in an indefinite prison term of 14-to-17 years. Noble now appeals, raising three assignments of error for review.

## II. Appeal

*A. Whether Noble's Plea Was Knowing, Intelligent, and Voluntary*

{¶ 16} In his first assignment of error, Noble argues that he did not knowingly, intelligently, and voluntarily enter into an *Alford* plea. Specifically, he claims that the trial court failed to conduct an adequate inquiry before accepting the plea.

{¶ 17} The U.S. Supreme Court held that a trial court may accept a guilty plea despite a defendant's claim of innocence "when . . . a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *North Carolina v. Alford*, 400 U.S. 25, 37 (1970). Because an *Alford* plea permits a defendant to maintain factual innocence while pleading guilty, a trial court has a heightened duty to ensure that the defendant's rights are protected and that the plea constitutes a rational decision. *State v. Satterwhite*, 2021-Ohio-2878, ¶ 17

(12th Dist.). Although a defendant may continue to assert innocence, an *Alford* plea carries the same legal effect as a guilty plea. *Id*.

{¶ 18} Courts have recognized that guilty pleas accompanied by protestations of innocence create an inherent concern that the defendant may not have knowingly, intelligently, and voluntarily entered into the plea. Accordingly, an *Alford* plea should not be accepted unless a factual basis exists for the plea and the trial court has attempted to resolve the apparent conflict between the waiver of trial rights and the assertion of innocence. *State v. Heiser-Mullins*, 2024-Ohio-5360, ¶ 14 (12th Dist.).

{¶ 19} When accepting an *Alford* plea, the trial court must determine that the defendant has made a rational calculation that entering the plea was in his best interest. *Satterwhite* at ¶ 18. However, although such an inquiry may be considered a best practice, the trial court is not required to directly question the defendant regarding whether such a rational calculation was made. *State v. Frazier*, 2024-Ohio-2114, ¶ 23 (12th Dist.). The court does not have an affirmative duty to inquire into the defendant's precise motivations for accepting the plea because, "[i]n the absence of such an inquiry, there may be sufficient information before the trial court to determine that the defendant's decision to plead guilty notwithstanding an assertion of innocence was a rational decision." *Satterwhite* at ¶ 19.

{¶ 20} Under *Alford*, the relevant inquiry is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id*. at ¶ 20, quoting *Alford*, 400 U.S. at 31. The Ohio Supreme Court has explained that this standard is satisfied where the record affirmatively demonstrates that: (1) the plea was not the result of coercion, deception, or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent under the

circumstances; (4) the defendant understood the nature of the charges; and (5) the plea was motivated by a desire to obtain a lesser penalty, a fear of the consequences of a jury trial, or both. *Id.*, citing *State v. Piacella*, 27 Ohio St.2d 92, 96 (1971). In determining whether a plea was knowingly, intelligently, and voluntarily made, a reviewing court must consider all of the particular facts and circumstances surrounding the case. *Id.*, citing *State v. Carter*, 60 Ohio St.2d 34, 38 (1979).

{¶ 21} In the present case, the record contains a sufficient factual basis to support Noble's decision to enter *Alford* pleas. The record further demonstrates that Noble's decision was made knowingly, intelligently, and voluntarily in light of the alternative courses of action available to him. The record also establishes that the pleas were not the product of coercion, deception, or intimidation; that counsel was present at the plea hearing; and that counsel's recommendation to enter *Alford* pleas was competent. In addition, the record affirmatively demonstrates that Noble understood the charges against him, including the maximum penalties involved.

{¶ 22} Moreover, the record shows that Noble's decision to enter *Alford* pleas was motivated by a desire to obtain a lesser penalty or avoid the potential consequences of a jury trial in light of the substantial evidence against him. That evidence included the substantial quantity of drugs and drug-trafficking materials discovered in plain view at his residence and as a result of lawful searches. In exchange, the State dismissed several charges, which decreased the length of Noble's potential prison sentence.

{¶ 23} Accordingly, the record does not support Noble's claim that his pleas were not entered knowingly, intelligently, and voluntarily. Rather, the record fully supports the trial court's determination that Noble made a rational decision to accept the State's plea offer despite his protestations of innocence. Noble's first assignment is therefore

overruled.

*B. Whether Noble Received Ineffective Assistance of Counsel*

{¶ 24} In his second assignment of error, Noble argues that he received ineffective assistance of counsel in connection with his *Alford* pleas. Specifically, he contends that counsel's representation rendered his pleas less than knowing and voluntary.

{¶ 25} Noble first asserts that the plea agreement was not in his best interest because several of the charges dismissed by the State either would have merged for sentencing purposes or would have been ordered to run concurrently. He further argues that counsel was ineffective for failing to secure an agreed sentence as part of the plea negotiations. Finally, Noble contends that counsel failed to object to the trial court's alleged failure to permit him to proclaim his innocence, make an allocution statement, or sufficiently inquire into the nature of his *Alford* pleas to ensure that they were voluntary under the circumstances.

{¶ 26} To establish ineffective assistance of counsel, an appellant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, the appellant must demonstrate both that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 687-688, 694; *State v. Arledge*, 2019-Ohio-3147, ¶ 8 (12th Dist.). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *State v. Zielinski*, 2011-Ohio-6535, ¶ 50 (12th Dist.).

{¶ 27} In addition, "[a] plea of guilty waives the right to claim that one was prejudiced by ineffective assistance of counsel, except to the extent that such ineffective assistance made the plea less than knowing, intelligent, and voluntary." *State v.*

*McMahon*, 2010-Ohio-2055, ¶ 33 (12th Dist.); *State v. Rice*, 2007-Ohio-6529, ¶ 17 (6th Dist.) ("Due to appellant's *Alford* plea, we are limited to an examination of whether appellant's counsel's performance caused his plea to be less than knowing and voluntary.").

{¶ 28} Here, the trial court personally addressed Noble and conducted a sufficient inquiry into his motivations for entering the pleas despite his assertions of innocence. The record further reflects that Noble was not deprived of the opportunity to make an allocution statement. To the contrary, Noble provided a lengthy statement at sentencing before the trial court imposed the sentence.

{¶ 29} Nor does Noble's challenge to the terms of his plea agreement establish ineffective assistance of counsel. The record contains no evidence regarding the scope of the plea negotiations between defense counsel and the State or whether the State would have agreed to more favorable terms than it already did. The agreement ultimately secured by counsel was favorable to Noble. In exchange for Noble's *Alford* pleas to four offenses, one firearm specification, and two forfeiture specifications, the State dismissed five additional offenses and another forfeiture specification.

{¶ 30} Although Noble argues that some of the dismissed charges may have merged or resulted in concurrent sentences, those assertions are entirely speculative. Nothing in the record suggests that the trial court would have merged offenses or imposed concurrent sentences after hearing the evidence at trial. Even assuming certain offenses may have merged, other offenses were clearly committed separately and could have been ordered to run consecutively, thereby exposing Noble to an even longer prison sentence.

{¶ 31} Through the negotiated plea agreement, Noble substantially reduced his

- 10 -

potential sentencing exposure. Although the agreement did not include an agreed sentence, it nevertheless reduced Noble's minimum potential prison term by nearly 13 years and allowed him to avoid what would have effectively amounted to a life sentence given his age. In short, Noble received a substantial benefit from the plea agreement.

{¶ 32} Accordingly, Noble cannot rely upon speculative, hindsight criticisms of the plea agreement to establish deficient performance by counsel. Furthermore, in light of the substantial sentencing benefit obtained through the plea agreement, Noble cannot credibly assert that he would have rejected the agreement and proceeded to trial, where he faced a potential prison term of 27-to-31 years. Noble's second assignment of error is overruled.

*C. Whether Noble's Sentence is Contrary to Law*

{¶ 33} In his third assignment of error, Noble argues that his sentence is contrary to law.

{¶ 34} A felony sentence is reviewed under the standard in R.C. 2953.08(G)(2). *State v. Jones*, 2026-Ohio-68, ¶ 74 (12th Dist.). Pursuant to that provision, an appellate court may modify or vacate a sentence if it finds by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law. *State v. Gable*, 2024-Ohio-293, ¶ 8 (12th Dist.).

{¶ 35} A consecutive sentence is contrary to law where the trial court fails to make the consecutive sentencing findings required by R.C. 2929.14(C)(4). *State v. Wood*, 2020-Ohio-422, ¶ 9 (12th Dist.). Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *Id*. Specifically, the trial court must find that (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive

sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 36} "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel." *State v. Bonnell*, 2014-Ohio-3177, ¶ 29, citing Crim.R. 32(A)(4). However, "a word-for-word recitation of the language of the statute is not required," and consecutive sentences should be upheld so long as the reviewing court can discern that the trial court engaged in the proper analysis and the record supports the findings. *Id*.

{¶ 37} In the present case, Noble does not dispute that the trial court made the necessary consecutive sentencing findings and incorporated those findings into the sentencing entries. Rather, he argues that the findings are unsupported by the record. In support of that argument, Noble characterizes the offenses as nonviolent, notes that the First Case came to light only because of his medical emergency, and emphasizes his cooperation with law enforcement. He also points to his alleged lack of criminal history, prior military service, and mental-health conditions as factors warranting leniency.

- 12 -

{¶ 38} Upon review, we find Noble's arguments unpersuasive. The record reflects that Noble previously served a lengthy prison sentence for drug-related offenses, yet that experience failed to deter him from engaging in additional criminal conduct. Significantly, Noble committed the offenses underlying the Second Case following his indictment in the First Case. Moreover, although Noble attempts to minimize his conduct as nonviolent, the record demonstrates that he possessed weapons in connection with the offenses. The record further establishes that Noble possessed substantial quantities of drugs intended for distribution, conduct that poses a serious danger to the community.

{¶ 39} Accordingly, we conclude that the trial court's decision to impose consecutive sentences is supported by the record and is not contrary to law. Noble's third assignment of error is overruled.

{¶ 40} Judgment affirmed.

BYRNE, P.J., and HENDRICKSON, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robert A. Hendrickson, Judge*

*/s/ Melena S. Siebert, Judge*